PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for Leaf Funding, Inc.


_____/s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


-------------------------------------------------------------------------x
                                                    :      Case Number:  07 CIV 10337
LEAF FUNDING, INC.,                                 :      Judge Sweet
                                                    :
        Plaintiff,                                  :              ECF CASE
                                                    :
        v.                                          :
                                                    :
ALLIANCE ENVIRONMENTAL TECHNOLOGIES,                :      NOTICE OF MOTION FOR
INC., JAMES SOLANO, LIGITA SOLANO                   :        DEFAULT JUDGMENT
ALLIANCE TECHNOLOGY GROUP, INC. and ATG             :
EQUIPMENT, INC.,                                    :
                                                    :
        Defendants.                                 :
_____x


TO:        Alliance Environmental Technologies, Inc.
           490 East 132nd Street
           Bronx, New York 10454

           James Solano
           421 North Long Beach Road
           Rockville Centre, New York 11570

           Ligita Solano
           421 North Long Beach Road
           Rockville Centre, New York 11570

Alliance Technology Group, Inc.
490 East 132nd Street
Bronx, New York 10306

ATG Equipment, Inc.
c/o Ligita Solano
421 North Long Beach Road
Rockville Centre, New York 11570

SIRS:

PLEASE TAKE NOTICE that on April 23, 2008, at 10:00 a.m. or as soon thereafter as

counsel may be heard, the undersigned attorneys for plaintiff will apply to the above named

Court located at U.S. Courthouse, 300 Quarropas Street, White Plains, New York 10601 for an

Order of Default Judgment pursuant to FRCP 55(b)(2) against defendants for failure to answer or

otherwise move with regard to the Complaint.

PLEASE TAKE FURTHER NOTICE that plaintiff shall rely upon an Affidavit of Service,

Affidavit of Amount Due and Non-Military Service and Request for Entry of Default.  Also, a

proposed form of Judgment is enclosed.

PLEASE TAKE FURTHER NOTICE that oral argument is hereby requested only if

opposition is timely filed and received.

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
Attorneys for Plaintiff


By:     /s/  Frank Peretore, Esq.
           Frank Peretore, Esq.

Dated: March 19, 2008

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I today caused a copy of the within request for entry of default judgment

and supporting papers to be served, via **certified** and **ordinary** mail, upon the defendants as follows:

Alliance Environmental Technologies, Inc.
490 East 132nd Street
Bronx, New York 10454

James Solano
421 North Long Beach Road
Rockville Centre, New York 11570

Ligita Solano
421 North Long Beach Road
Rockville Centre, New York 11570

Alliance Technology Group, Inc.
490 East 132nd Street
Bronx, New York 10306

ATG Equipment, Inc.
c/o Ligita Solano
421 North Long Beach Road
Rockville Centre, New York 11570

Dated:  March 19, 2008                    By:    /s/  Frank Peretore, Esq.

                                                        Frank Peretore, Esq.

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for Leaf Funding, Inc.

_____ /s/ Frank Peretore, Esq._
Frank Peretore, Esq.
FP #7020


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x
                                  :      Case Number:  07 CIV 10337

LEAF FUNDING, INC.,                 :      Judge Sweet
                                  :

     Plaintiff,                    :          ECF CASE
                                  :

     v.                          :
                                  :

ALLIANCE ENVIRONMENTAL TECHNOLOGIES,  :      REQUEST FOR ENTRY
INC., JAMES SOLANO, LIGITA SOLANO      :        OF DEFAULT
ALLIANCE TECHNOLOGY GROUP, INC. and ATG  :
EQUIPMENT, INC.,                  :
                                  :

     Defendants.                 :
_____x


TO:       Alliance Environmental Technologies, Inc.
           490 East 132nd Street
           Bronx, New York 10454

           James Solano
           421 North Long Beach Road
           Rockville Centre, New York 11570

           Ligita Solano
           421 North Long Beach Road
           Rockville Centre, New York 11570

Alliance Technology Group, Inc.
490 East 132nd Street
Bronx, New York 10306

ATG Equipment, Inc.
c/o Ligita Solano
421 North Long Beach Road
Rockville Centre, New York 11570

Will you please enter the default of the defendants Alliance Environmental Technologies, Inc.,

James Solano, Ligita Solano, Alliance Technology Group, Inc. and ATG Equipment, Inc., jointly and

severally, in the above-entitled matter for failure to plead or otherwise defend as provided by the

Federal Rules of Civil Procedure.

Plaintiff relies upon the enclosed Affidavit of Service in support of the request filed herein.

PERETORE & PERETORE, P.C.
Counselors at Law
191 Woodport Road
Sparta, New Jersey  07871
Attorneys for Plaintiff

By:   /s/  Frank Peretore, Esq.
Frank Peretore, Esq.

Dated: March 19, 2008

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I today caused a copy of the within request for entry of default judgment

and supporting papers to be served, via **certified** and **ordinary** mail, upon the defendants as follows:

Alliance Environmental Technologies, Inc.
490 East 132nd Street
Bronx, New York 10454

James Solano
421 North Long Beach Road
Rockville Centre, New York 11570

Ligita Solano
421 North Long Beach Road
Rockville Centre, New York 11570

Alliance Technology Group, Inc.
490 East 132nd Street
Bronx, New York 10306

ATG Equipment, Inc.
c/o Ligita Solano
421 North Long Beach Road
Rockville Centre, New York 11570

Dated:  March 19, 2008                    By:    /s/  Frank Peretore, Esq.

                                                    Frank Peretore, Esq.

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for Leaf Funding, Inc.


_____ /s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


--------------------------------------------------------------------------x
|  | : | Case Number:  07 CIV 10337 |
| LEAF FUNDING, INC., | : | Judge Sweet |
|  | : |  |
| Plaintiff, | : | ECF CASE |
|  | : |  |
| v. | : |  |
|  | : |  |
| ALLIANCE ENVIRONMENTAL TECHNOLOGIES, | : |  |
| INC., JAMES SOLANO, LIGITA SOLANO | : | AFFIDAVIT OF SERVICE |
| ALLIANCE TECHNOLOGY GROUP, INC. and ATG | : | AND DEFAULT |
| EQUIPMENT, INC., | : |  |
|  | : |  |
| Defendants. | : |  |
_____x


STATE OF NEW JERSEY          :
                             : SS
COUNTY OF SUSSEX             :

FRANK PERETORE, of full age, being duly sworn according to law, upon his oaths deposes

and says:

1.  I am an attorney at law in the State of New York and am a partner in the law firm of

Peretore & Peretore, P.C., attorneys for the plaintiff in the above-entitled matter.  I make this

1

Affidavit upon personal knowledge and in support of the plaintiff's Motion for Default Judgment against defendants.

2.  On December 11, 2007, the Complaint and supporting papers in this action were served upon the defendant Alliance Environmental Technologies, Inc. by delivering a true copy to the Secretary of State, as appears from the Affidavit of Service, a true and accurate copy of which is attached hereto as **Exhibit A**.

3.  On December 11, 2007, the Complaint and supporting papers in this action were served upon the defendant Alliance Technology Group, Inc. by delivering a true copy to the Secretary of State, as appears from the Affidavit of Service, a true and accurate copy of which is attached hereto as **Exhibit B**.

4.  On December 1, 2007, the Complaint and supporting papers in this action were served upon the defendant James Solano by delivering a true copy to James Solano, individually, as appears from the Affidavit of Service, a true and accurate copy of which is attached hereto as **Exhibit C**.

5.  On December 1, 2007, the Complaint and supporting papers in this action were served upon the defendant Ligita Solano by delivering a true copy to James Solano, Co-Tenant, as appears from the Affidavit of Service, a true and accurate copy of which is attached hereto as **Exhibit D**.

6.  On January 8, 2008, the Complaint and supporting papers in this action were served upon the defendant ATG Equipment, Inc. by delivering a true copy to Ligita Solano, as appears from the Affidavit of Service, a true and accurate copy of which is attached hereto as **Exhibit E**.

7.  Greater than twenty (20) days has expired since the last service and filing of the Summons and Complaint.

8.  The time within which the defendants may answer or otherwise move as to the Complaint

has expired and said defendants have not answered or otherwise moved, and the time for said

defendants to answer or otherwise move has not been extended.

9.  There has been no prior application for the relief sought in this motion.


                                                    /s/  Frank Peretore, Esq.
                                                   Frank Peretore, Esq.


Sworn to and subscribed
before me this 18th day
of March, 2008.


    /s/  Marlene J. Meyers

Notary Public of New Jersey
My Commission Expires Feb. 9, 2010

**EXHIBIT A**

*Peretore & Peretore*

UNITED STATES DISTRICT COURT

COUNTY OF

INDEX NO:  07 CIV 10337
FILED ON:
DISTRICT:  Southern/NY

*Leaf Funding, Inc.*

vs

Plaintiff(s)

*Alliance Environmental Technologies, Inc, et. al.*

Defendant(s)

STATE OF NEW YORK, COUNTY OF ALBANY, SS.:

## AFFIDAVIT OF SERVICE
## BY THE SECRETARY OF STATE

_____ Stephen L. Collen _____ , being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; that on _____ December 11, 2007 _____ , at __ 2:00 pm __ , at the office of the Secretary of State of the State of New York in the City of Albany, New York, deponent served the annexed

Summons in a Civil Case and Complaint with Civil Cover Sheet

_____ , on

Alliance Environmental Technologies, Inc,

Defendant in this action, by delivering to and leaving with ____ Donna Christie ____ , Authorized Agent, in the Office of the Secretary of State of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State the statutory fee, if required. Service was made pursuant to Section __ 306 Business Corporation Law __ .

☐  Service was completed by mailng notice of such service and one (1) true copy thereof by        ☐ Registered or

☐ 1st Class Mail and Certified Mail, # _____ , Return Receipt Requested on _____

to said defendant at: _____ .

Papers so served were properly endorsed with the index number and date of filing.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

Description of the person served:  Approx. Age: _44 years_     Approx. weight: _130 lbs_     Approx. Ht.: _5'5"_

Sex: _female_   Color of skin: _white_   Color of hair: _brown_   Other: _____

Sworn to before me on___ December 11, 2007

**MARCY A. O'HARE**
NOTARY PUBLIC, State of New York
No. 4865530, Qualified in Albany County
Term Expires July 14, 2010

Stephen L. Collen

Invoice•Work Order # 0710153

**EXHIBIT B**

COUNTY OF

UNITED STATES DISTRICT COURT

INDEX NO: 07 civ 103337
FILED ON: November 14, 2007
DISTRICT: Southern/New York

*Leaf Funding, Inc.*

vs

Plaintiff(s)

*Alliance Environmental Technologies, Inc., et. al.*

Defendant(s)

STATE OF NEW YORK, COUNTY OF ALBANY, SS.:

## AFFIDAVIT OF SERVICE
## BY THE SECRETARY OF STATE

_____ Stephen L. Collen _____, being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____ December 11, 2007 _____, at ___ 2:00 pm ___, at the office

of the Secretary of State of the State of New York in the City of Albany, New York, deponent served the annexed '

___ Summons in a Civil Case, Complaint with Civil Cover Sheet, Rule 7.1, Judge Sweet's Rules, Instructions for

Filing an Electronic Case or Appeal Procedures for Electronic Case Filing, Guidelines for Electronic Case Filing _____, on

Alliance Technology Group Inc.

Defendant in this action, by delivering to and leaving with _____ Donna Christie _____, Authorized Agent, in the Office of

the Secretary of State of the State of New York, personally at the Office of the Secretary of State of the State of New

York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State

the statutory fee, if required. Service was made pursuant to Section 306 Business Corporation Law .

☐  Service was completed by mailng notice of such service and one (1) true copy thereof by        ☐ Registered or

☐ 1st Class Mail and Certified Mail, # _____, Return Receipt Requested on _____

to said defendant at: _____ .

Papers so served were properly endorsed with the index number and date of filing.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the

Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

Description of the person served:  Approx. Age: _44 years_    Approx. weight: _130 lbs_    Approx. Ht.: _5'5"_

Sex: _female_   Color of skin: _white_   Color of hair: _brown_   Other: _____

Sworn to before me on____ December 11, 2007 ____

_____
**MARCY A. O'HARE**
NOTARY PUBLIC, State of New York
No. 4865530, Qualified in Albany County
Term Expires July 14, 2010

_____
Stephen L. Collen

Invoice•Work Order # 0710170

**EXHIBIT C**

U.S. DISTRICT COURT
SOUTHERN, DISTRICT OF NEW YORK

N
Index # 07 CIV 10337

```
_____
Plaintiff(s)
LEAF FUNDING, INC.,

                    - against -              AFFIDAVIT

Defendant(s)
ALLIANCE ENVIRONMENTAL TECHNOLOGIES, JAMES SOLANO, ET AL
_____
```

Court Date:
Your File No:
Our Rec. No: 274248

STATE OF NEW YORK: COUNTY OF NASSAU: ss:

Frank Sicilia, being duly sworn deposes and says deponent is not a party
to this action and is over the age of eighteen and resides in the State of New York.


That on 12/01/07 at 12:15PM at:

      421 NORTH LONG BEACH RD., (PVT HSE)
      ROCKVILLE CENTRE, NY 11570

deponent served the within CIVIL COVER SHEET, SUM, COMPL, RULE 7.1, JUDGE SWEET'S RULES*
on JAMES SOLANO recipient therein named.


By personally delivering to and leaving with said
JAMES SOLANO a true copy thereof and that he knew the
person so served to be the person mentioned and described in said
CIVIL COVER SHEET####

A description of the recipient or other person served on behalf of the recipient is as follows:

Approximate Age: 57    Approximate Weight: 190    Approximate Height: 5'10
Color of Skin: WHITE         Color of Hair: GRAY/BALD      Sex: MALE
*INSTRUCTIONS FOR FILING AN ELECTRONIC CASE OR APPEAL PROCEDURES
FOR ELECTRONIC CASE FILING; GUIDELINES FOR ELECTRONIC CASE FILING

Spoke w/ JAMES SOLANO on 12/01/07 who confirmed his/her nonmilitary status.


Deponent asked the person spoken to whether the defendant was presently in the military service of the United States Government or on active
duty in the military service in the State of New York and was informed he was not.  Your deponent further says that he knew the person so
served to be the person mentioned and described in said legal papers as defendant/respondent therein.  Your deponent is over the age of 18
years and is not a party to this action.

Sworn to before me this date 12/04/07
Bruce J Smilowitz #01SM4965926
Notary Public, State of New York
Nassau County, Commission Expires 04/30/2010

Frank Sicilia

**EXHIBIT D**

U.S. DISTRICT COURT
SOUTHERN, DISTRICT OF NEW YORK

Index # 07 CIV 10337    N

---

Plaintiff(s)
LEAF FUNDING, INC.,

Peretore & Peretore, P
191 Woodport Rd.,
Sparta, NJ 07871

- against -    AFFIDAVIT

Defendant(s)
ALLIANCE ENVIRONMENTAL TECHNOLOGIES, JAMES SOLANO, ET AL

Court Date:
Your File No:
Our Rec. No: 274251

---

STATE OF NEW YORK: COUNTY OF NASSAU: ss:

Frank Sicilia, being duly sworn deposes and says deponent is not a party
to this action and is over the age of eighteen and resides in the State of New York.

That on 12/01/07 at 12:15PM at:

      421 NORTH LONG BEACH RD.,
      ROCKVILLE CENTRE, NY 11570

deponent served the within CIVIL COVER SHEET, SUM, COMPL, RULE 7.1, JUDGE SWEET'S RULES*
on LIGITA SOLANO recipient therein named.

Service was made in the following manner after your deponent was
unable with due dilligence to serve the recipient in person:

By delivering a true copy thereof to and leaving with JAMES SOLANO-CO-TENANT
a person of suitable age and discretion at 421 NORTH LONG BEACH RD., ROCKVILLE CENTRE, NY
the said premises being the recipient's dwelling place
within the State of New York.
A description of the recipient or other person served on behalf of the recipient is as follows:
Approximate Age: 57    Approximate Weight: 190    Approximate Height: 5'10
Color of Skin: WHITE    Color of Hair: GRAY/BALD    Sex: MALE
*INSTRUCTIONS FOR FILING AN ELECTRONIC CASE OR APPEAL PROCEDURES
FOR ELECTRONIC CASE FILING; GUIDELINES FOR ELECTRONIC CASE FILING

Spoke w/ JAMES SOLANO-CO-TENANT on 12/01/07 who confirmed his/her nonmilitary status.

Deponent also mailed a copy(ies) of same post paid by first class mail properly addressed to
defendant(s) at the aforementioned address in an envelope marked 'personal & confidential'
and not indicating that the communication was from an attorney or concerned an action against
the defendant(s) and deposited said envelope in a post office depository under exclusive care
and custody of the United States Postal Service within New York State on 12/04/07.

Deponent asked the person spoken to whether the defendant was presently in the military service of the United States Government or on active
duty in the military service in the State of New York and was informed he was not. Your deponent further says that he knew the person so
served to be the person mentioned and described in said legal papers as defendant/respondent therein. Your deponent is over the age of 18
years and is not a party to this action.

Sworn to before me this date 12/04/07
Bruce J Smilowitz #01SM4965926
Notary Public, State of New York
Nassau County, Commission Expires 04/30/2010

Frank Sicilia

**EXHIBIT E**

U.S. DISTRICT COURT of the STATE OF NEW YORK                                 N
COUNTY OF SOUTHERN, NEW YORK                         Index # 07 CIV 10337

---

Plaintiff(s)
LEAF FUNDING, INC.,

                                                        Peretore & Peretore, P.
                        - against -          AFFIDAVIT      191 Woodport Rd.,
                                                           Sparta, NJ 07871
Defendant(s)
ALLIANCE ENVIRONMENTAL TECHNOLOGIES, JAMES SOLANO, ET AL

---

                                             Court Date:
                                             Your File No:
                                             Our Rec. No: 277813

STATE OF NEW YORK: COUNTY OF NASSAU: ss:

Frank Sicilia, being duly sworn deposes and says deponent is not a party
to this action and is over the age of eighteen and resides in the State of New York.


That on 01/08/08 at 3:10PM at:

          C/O LIGATA SOLANO, 421 NORTH LONG BEACH RD.,
          ROCKVILLE CENTRE, NY 11570

deponent served the within CIVIL COVER SHEET, SUM, COMPL, RULE 7.1, JUDGE SWEET'S RULES*
on ATG EQUIPMENT, INC., recipient therein named.
Service was made in the following manner after your deponent was
unable with due dilligence to serve the recipient in person:
BY AFFIXING a true copy thereof to the door of said premises, the
last known address as verified by the attorney's records.
Place of employement could not be ascertained.
AFFIXED


Deponent had previously attempted to serve the above named recipient on:
12/27/07-6:31PM,12/29-3:40PM,12/31-7:33AM,1/3/08-7:33AM
*INSTRUCTIONS FOR FILING AN ELECTRONIC CASE OR APPEAL PROCEDURES
FOR ELECTRONIC CASE FILING




Deponent also mailed a copy(ies) of same post paid by first class mail properly addressed to
defendant(s) at the aforementioned address in an envelope marked 'personal & confidential'
and not indicating that the communication was from an attorney or concerned an action against
the defendant(s) and deposited said envelope in a post office depository under exclusive care
and custody of the United States Postal Service within New York State on 01/10/08.




Deponent asked the person spoken to whether the defendant was presently in the military service of the United States Government or on active
duty in the military service in the State of New York and was informed he was not.  Your deponent further says that he knew the person so
served to be the person mentioned and described in said legal papers as defendant/respondent therein.  Your deponent is over the age of 18
years and is not a party to this action.

Sworn to before me this date 01/10/08
Timothy L. Compton #01CO6035895
Notary Public, State of New York                    _____
Nassau County, Commission Expires 01/10/2010            Frank Sicilia

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for Leaf Funding, Inc.


_____/s/ Frank Peretore, Esq._
Frank Peretore, Esq.
FP #7020



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


-------------------------------------------------------------------------x
                                              :      Case Number:  07 CIV 10337
LEAF FUNDING, INC.,                           :      Judge Sweet
                                              :
     Plaintiff,                               :              ECF CASE
                                              :
     v.                                       :
                                              :
ALLIANCE ENVIRONMENTAL TECHNOLOGIES,          :      AFFIDAVIT OF AMOUNT
INC., JAMES SOLANO, LIGITA SOLANO             :      DUE AND NON-MILITARY
ALLIANCE TECHNOLOGY GROUP, INC. and ATG       :            SERVICE
EQUIPMENT, INC.,                              :
                                              :
     Defendants.                              :
_____x


STATE OF PENNSYLVANIA       :
                            : ss.
COUNTY OF PHILADELPHIA      :

        James J. Grant, being duly sworn upon his oath, deposes and says:

        1.  I am a Vice President of Leaf Funding, Inc. ("Leaf" or "plaintiff") in this matter and I

make this Affidavit in support of plaintiff's motion for Default Judgment as against the defendants.  I

am authorized to make the within affidavit on behalf of plaintiff and am fully and personally familiar with the circumstances and facts contained herein.

## PROCEDURAL HISTORY

2.  The above action was commenced by the service of a Summons and Complaint. (See Exhibit A to the Affidavit of Service and Default.) True and accurate copies of the Summons and Complaint are attached hereto as **EXHIBIT A.**

3. The time for the defendants to answer or move with respect to the Complaint has expired and the defendants have not answered or moved with respect to the Complaint.

## TRANSACTIONAL HISTORY

## (Lease 1:  Breach of Contract)

4.  On or about April 27, 2006, Alliance Environmental Technologies, Inc. ("Alliance Environmental") entered into and executed an Master Lease Agreement No. 1036829-901 ("Lease 1"), as Lessee, with Leaf Funding, as Lessor, whereby Alliance Environmental leased certain equipment, which is listed on the Attachment A attached to Lease 1.  Attached hereto as **EXHIBIT B** is a true and accurate copy of Lease 1 and Attachment A.

5.  On or about April 18, 2006 James Solano and Ligita Solano ("the Guarantors") entered into and executed an unconditional and continuing Personal Guaranty ("the Guaranty"), whereby they guaranteed the obligations of Alliance Environmental then existing or thereafter incurred.  Attached hereto as **EXHIBIT C** is a true and accurate copy of the Guaranty.

6.  On or about April 19, 2006 Alliance Technology Group, Inc. ("Alliance Technology" or collectively with defendants James Solano and Ligita Solano as "the Guarantors") entered into and

executed an unconditional and continuing Guaranty, whereby it guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT D** is a true and accurate copy of the Guaranty.

7. On or about April 18, 2006 ATG Equipment, Inc. ("ATG" or collectively with defendants James Solano, Ligita Solano and Alliance Technology as "the Guarantors") entered into and executed an unconditional and continuing Guaranty, whereby it guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT E** is a true and accurate copy of the Guaranty.

8. Alliance Environmental defaulted under the terms of Lease 1 in that it has failed to make the required monthly payments since January, 2007.

9. The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

10. Pursuant to paragraph 13 of Lease 1, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

11. Plaintiff has declared Lease 1 in default and demanded the accelerated balance, plus late charges, plus accruing interest and late charges.

12. Pursuant to paragraph 13 of Lease 1 in the event Alliance Environmental defaults under the terms of Lease 1, plaintiff is still further entitled to immediate and permanent title and possession of the leased equipment which is the subject of Lease 1.

13. Pursuant to paragraph 13 of Lease 1, in the event the defendants default, defendants are additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

14. Pursuant to the terms of Lease 1, plaintiff has declared Lease 1 in default and demanded the accelerated balance, plus late charges, for a total of $124,356.07 as of February, 2008, plus accruing interest, late charges and any applicable taxes. This sum has been calculated as follows:

| | |
|---|---|
| Original Lease Balance | $170,019.60 |
| Less Payments Received | $ 49,889.05 |
| Late Charges | $  4,190.52 |
| Miscellaneous | $     35.00 |
| **TOTAL** | **$124,356.07** |

## (Loan 1: Breach of Contract)

15. On or about June 30, 2006, Alliance Environmental entered into and executed a Master Loan and Security Agreement No. 1040954-001 ("Loan 1"), as Borrower, with Leaf Funding as Lender.  Loan 1 granted Leaf Funding a lien to secure all existing and future obligations of Alliance Environmental to Leaf, in the following collateral:

> "all inventory, supplies, accounts, general intangibles, chattel paper, instruments, goods, equipment, machinery, fixtures, furnishing, and all other personal property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations"

Attached hereto as **EXHIBIT F** is a true and accurate copy of Loan 1 and Attachment A.

16. On or about June 30, 2006 James Solano and Ligita Solano ("the Guarantors") entered into and executed an unconditional and continuing Personal Guaranty ("the Guaranty"), whereby they guaranteed the obligations of Alliance Environmental then existing or thereafter incurred.  Attached

hereto as **EXHIBIT G** is a true and accurate copy of the Guaranty.

17.  On or about June 30, 2006 ATG Equipment, Inc. ("ATG" or collectively with the other guarantors as "the Guarantors") entered into and executed an unconditional and continuing Guaranty, whereby it guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT H** is a true and accurate copy of the Guaranty.

18.  On or about June 30, 2006 Alliance Technology (collectively with the other guarantors as "the Guarantors") entered into and executed an unconditional and continuing Guaranty, whereby it guaranteed the obligations of Alliance Environmental then existing or thereafter incurred.  Attached hereto as **EXHIBIT I** is a true and accurate copy of the Guaranty.

19.  Alliance Environmental defaulted under the terms of  Loan 1 in that it has failed to make the required monthly payments since February, 2007.

20.  The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

21.  Pursuant to paragraph 5 of Loan 1, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

22.  Plaintiff has declared Loan 1 in default and demanded the accelerated balance, plus late charges, plus accruing interest and late charges.

23.  Pursuant to paragraph 5 of Loan 1 in the event Alliance Environmental defaults under the terms of Loan 1, plaintiff is still further entitled to immediate and permanent title and possession of the collateral which is the subject of Loan 1.

24.  Pursuant to paragraph 5 of Loan 1, in the event the defendants default, defendants are

additionally liable to plaintiff for, <u>inter alia</u>, contractual attorneys' fees.

25. Pursuant to the terms of Loan 1, plaintiff has declared Lease 1 in default and demanded the accelerated balance, plus late charges, for a total of $141,083.36 as of February, 2008, plus accruing interest, late charges and any applicable taxes. This sum has been calculated as follows:

| | |
|---|---|
| Original Loan Balance | $262,229.08 |
| Less Payments Received | $128,805.72 |
| Late Charges | $  7,500.00 |
| Miscellaneous | $     160.00 |
| **TOTAL** | **$141,083.36** |

## (Collateralized Guaranties: Breach of Contract)

26. Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

27. On or about June 30, 2006 Alliance Technology entered into and executed an unconditional and continuing Collateralized Guaranty, whereby it further guaranteed the obligations of Alliance Environmental then existing or thereafter incurred and further granted a lien to secure all existing and future obligations of Alliance Environmental to Leaf in the following collateral as follows:

> "all inventory, supplies, accounts, general intangibles, chattel paper, instruments, goods, equipment, machinery, fixtures, furnishing, and all other personal property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations"

6

Attached hereto as **EXHIBIT J** is a true and accurate copy of the Collateralized Guaranty.

28.  On or about June 30, 2006 ATG Equipment entered into and executed an unconditional and continuing Collateralized Guaranty, whereby it further guaranteed the obligations of Alliance Environmental then existing or thereafter incurred and further granted a lien to secure all existing and future obligations of Alliance Environmental to Leaf in the following collateral as follows:

> "all inventory, supplies, accounts, general intangibles, chattel paper, instruments, goods, equipment, machinery, fixtures, furnishing, and all other personal property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations"

Attached hereto as **EXHIBIT K** is a true and accurate copy of the Collateralized Guaranty.

29. Defendants Alliance Technology and ATG Equipment defaulted under the terms of the Collateralized Guaranties in that they have failed to make the required monthly payments.

30.  The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

31.  Pursuant to the terms of the Collateralized Guaranties, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

32.  Plaintiff has declared Lease 1 and Loan 1 in default and demanded the accelerated balances, plus late charges, for a total of $265,439.43 as of February, 2008 plus accruing interest and late charges.

33.  Pursuant to the terms of Collateralized Guaranties in the event Alliance Technology and ATG Equipment default under the terms of Collateralized Guaranties, plaintiff is still further entitled to immediate and permanent title and possession of the collateral which is the subject of the Collateralized Guaranties.

34.  Pursuant to the terms of Collateralized Guaranties, in the event the defendants default, defendants are additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

**(Restructure of Lease Agreement: Breach of Contract)**

35.  On or about November 27, 2006 Alliance Environmental entered into and executed a Restructure of Lease Agreement whereby a new lien was placed on the collateral listed in the Schedule A to the Restructure of Lease Agreement and Guarantors James Solano and Ligita Solano consented to same.  Attached hereto as **EXHIBIT L** is a true and accurate copy of the Restructure of Lease Agreement and Schedule A.  Except as expressly modified in the Restructure of Lease Agreement, Loan 2 remained in full force and effect.

36.  On or about November 27, 2006 Alliance Technology ("the Guarantors") entered into and executed an unconditional and continuing Guaranty with regard to the Restructure Agreement, whereby they guaranteed the obligations of Alliance Environmental then existing or thereafter incurred.  Attached hereto as **EXHIBIT M** is a true and accurate copy of the Guaranty.

37.  On or about November 27, 2006 ATG Equipment ("the Guarantors") entered into and executed an unconditional and continuing Guaranty with regard to the Restructure Agreement, whereby they guaranteed the obligations of Alliance Environmental then existing or thereafter incurred.  Attached hereto as **EXHIBIT N** is a true and accurate copy of the Collateralized Guaranty.

8

38.  Alliance Environmental defaulted under the terms of the Restructure Agreement in that it has failed to make the required monthly payments since January, 2007.

39.  The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

40.  Pursuant to the terms of the Restructure of Lease Agreement, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

41.  Plaintiff has declared the Restructure of Lease Agreement in default and demanded the accelerated balance, plus late charges, plus accruing interest and late charges.

42.  Pursuant to the terms of the Restructure of Lease Agreement, in the event Alliance Environmental defaults under the terms of the Restructure of Lease Agreement, plaintiff is still further entitled to immediate and permanent title and possession of the collateral, which is the subject of the Restructure of Lease Agreement.

43.  Pursuant to the terms of the Restructure of Lease Agreement, in the event the defendants default, defendants are additionally liable to plaintiff for, <u>inter alia</u>, contractual attorneys' fees.

44.  In total, the defendants owe to plaintiff the sum of $265,439.43 as of February, 2008 .

45.  This office performed a search with the Department of Defense Manpower Data Center. No record of defendants James Solano or Ligita Solano were located.  Copies of the Request for Military Status form are attached hereto as **EXHIBIT O**.

   /s/  James J. Grant
James J. Grant

Sworn to and subscribed
before me this 3rd day
of March, 2008.

9

_____/s/  Danielle M. Baker
Notary Public City of Philadelphia
Philadelphia County
My Commission Expires May 9, 2011

**EXHIBIT A**

# United States District Court

_____ **DISTRICT OF** _____

Leaf Funding, Inc.

## SUMMONS IN A CIVIL CASE

**V.**

CASE NUMBER:    07 CIV 10337

Alliance Environmental Technologies, Inc., James
Solano, Ligita Solano, Alliance Technology Group,
Inc. and ATG Equipment, Inc.

TO: (Name and address of defendant)

Alliance Environmental Technologies, Inc.
490 East 132nd Street
Bronx, New York 10454

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Peretore & Peretore, P.C.
110 Park Street
Staten Island, New York 10306

an answer to the complaint which is herewith served upon you, within _____ 35 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

_____                    _____
CLERK                                                         DATE

_____
(BY) DEPUTY CLERK

AO 440  (Rev. 10/93)  Summons In a Civil Action -SDNY  WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served: _____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐  Returned unexecuted: _____

☐  Other *(specify):* _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                    Date                                                    Signature of Server

                                                              _____
                                                              Address of Server

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____ **DISTRICT OF** _____

Leaf Funding, Inc.

## SUMMONS IN A CIVIL CASE

### V.

CASE NUMBER:   07 CIV 10337

Alliance Environmental Technologies, Inc., James
Solano, Ligita Solano, Alliance Technology Group,
Inc. and ATG Equipment, Inc.

TO: (Name and address of defendant)

James Solano
421 North Long Beach Road
Rockville Center, New York 11570

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Peretore & Peretore, P.C.
110 Park Street
Staten Island, New York 10306

an answer to the complaint which is herewith served upon you, within _____ 35 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

_____        _____
CLERK                                    DATE

_____
(BY) DEPUTY CLERK

AO 440  (Rev. 10/93)  Summons In a Civil Action -SDNY  WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |

| NAME OF SERVER (PRINT) | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served: _____ , _____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐  Returned unexecuted: _____
_____
_____

☐  Other (specify): _____
_____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
              Date                                                                            Signature of Server

                                         _____
                                         Address of Server

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____ **DISTRICT OF** _____

Leaf Funding, Inc.

### SUMMONS IN A CIVIL CASE

### V.

CASE NUMBER:    07 CIV 10337

Alliance Environmental Technologies, Inc., James
Solano, Ligita Solano, Alliance Technology Group,
Inc. and ATG Equipment, Inc.

TO: (Name and address of defendant)

Ligita Solano
421 North Long Beach Road
Rockville Center, New York 11570

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Peretore & Peretore, P.C.
110 Park Street
Staten Island, New York 10306

an answer to the complaint which is herewith served upon you, within _____35_____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

CLERK                                                              DATE

(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons In a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |

| NAME OF SERVER (PRINT) | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
　　　　　　　　　Date　　　　　　　　　　　　　　　　Signature of Server

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　Address of Server

(1)   As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____ **DISTRICT OF** _____

Leaf Funding, Inc.

## SUMMONS IN A CIVIL CASE

**V.**

CASE NUMBER:   07 CIV 10337

Alliance Environmental Technologies, Inc., James
Solano, Ligita Solano, Alliance Technology Group,
Inc. and ATG Equipment, Inc.

TO: (Name and address of defendant)

Alliance Technology Group, Inc.
490 East 132nd Street
Bronx, New York 10454

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Peretore & Peretore, P.C.
110 Park Street
Staten Island, New York 10306

an answer to the complaint which is herewith served upon you, within _____ 35 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

_____          _____
CLERK                                                              DATE

_____
(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons In a Civil Action -SDNY  WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐   Served personally upon the defendant.  Place where served: _____ ,_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐   Returned unexecuted: _____

☐   Other *(specify):* _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
            Date                               Signature of Server

_____
Address of Server

(1)   As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____ DISTRICT OF _____

Leaf Funding, Inc.

## SUMMONS IN A CIVIL CASE

### V.

CASE NUMBER:   07 CIV 10337

Alliance Environmental Technologies, Inc., James
Solano, Ligita Solano, Alliance Technology Group,
Inc. and ATG Equipment, Inc.

TO: (Name and address of defendant)

ATG Equipment, Inc.
1866 Berlin Turnpike
Westfield, CT 06109

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Peretore & Peretore, P.C.
110 Park Street
Staten Island, New York 10306

an answer to the complaint which is herewith served upon you, within _____35_____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

_____        _____
CLERK                                                              DATE

_____
(BY) DEPUTY CLERK

AO 440  (Rev. 10/93) Summons In a Civil Action -SDNY  WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |

| NAME OF SERVER (PRINT) | TITLE |
|---|---|

*Check one box below to indicate appropriate method of service*

☐   Served personally upon the defendant.  Place where served: _____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐   Returned unexecuted: _____

☐   Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
             Date                         Signature of Server

                                      _____
                                        Address of Server

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for Leaf Funding, Inc.

_____ /s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                  :        Case Number:
LEAF FUNDING, INC.,                :        Judge
                                  :
      Plaintiff,               :           ECF CASE
                                  :
      v.                     :
                                  :
ALLIANCE ENVIRONMENTAL TECHNOLOGIES,  :
INC., JAMES SOLANO, LIGITA SOLANO    :        COMPLAINT
ALLIANCE TECHNOLOGY GROUP, INC. and ATG  :
EQUIPMENT, INC.,             :
                                  :
      Defendants.             :
_____x

       Plaintiff, Leaf Funding, Inc. (hereinafter referred to as plaintiff or "Leaf Funding") by its

attorneys, Peretore & Peretore, P.C., complaining of the defendants allege as follows:

### JURISDICTION AND PARTIES

      1.  This court has jurisdiction of the within cause of action pursuant to 28 U.S.C. 1332,

plaintiff and defendants being citizens of different states and the amount in controversy

exceeding Seventy Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

2.  Plaintiff, Leaf Funding, Inc., is a Delaware corporation with its principal offices at 1818 Market Street, 9th Floor, Philadelphia, PA 19103.

3.  Upon information and belief, defendant Alliance Environmental Technologies, Inc. is a New York corporation with offices located at 490 East 132nd Street, Bronx, New York 10454.

4.  Upon information and belief, defendant James Solano is a New York resident residing at 421 North Long Beach Road, Rockville Center, New  York 11570.

5.  Upon information and belief, defendant Ligita Solano is a New York resident residing at 421 North Long Beach Road, Rockville Center, New York 11570.

6.  Upon information and belief, defendant Alliance Technology Group, Inc. is a New York corporation with offices located at 490 East 132nd Street, Bronx, New York 10454.

7. Upon information and belief, defendant ATG Equipment, Inc. is a Connecticut corporation with offices located at 1866 Berlin Turnpike, Westfield, CT 06109.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

### (Lease 1:  Breach of Contract)

8.  On or about April 27, 2006, Alliance Environmental Technologies, Inc. ("Alliance Environmental") entered into and executed an Master Lease Agreement No. 1036829-901 ("Lease 1"), as Lessee, with Leaf Funding, as Lessor, whereby Alliance Environmental leased certain equipment, which is listed on the Attachment A attached to Lease 1.  Attached hereto as **EXHIBIT A** is a true and accurate copy of Lease 1 and Attachment A.

9.  On or about April 18, 2006 James Solano and Ligita Solano ("the Guarantors") entered into and executed an unconditional and continuing Personal Guaranty ("the Guaranty"), whereby

2

they guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT B** is a true and accurate copy of the Guaranty.

10. On or about April 19, 2006 Alliance Technology Group, Inc. ("Alliance Technology" or collectively with defendants James Solano and Ligita Solano as "the Guarantors") entered into and executed an unconditional and continuing Guaranty, whereby it guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT C** is a true and accurate copy of the Guaranty.

11. On or about April 18, 2006 ATG Equipment, Inc. ("ATG" or collectively with defendants James Solano, Ligita Solano and Alliance Technology as "the Guarantors") entered into and executed an unconditional and continuing Guaranty, whereby it guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT D** is a true and accurate copy of the Guaranty.

12. Alliance Environmental defaulted under the terms of Lease 1 in that it has failed to make the required monthly payments.

13. The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

14. Pursuant to the terms of Lease 1, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

15. Plaintiff has declared Lease 1 in default and demanded the accelerated balance, plus late charges, for a total of ONE HUNDRED TWENTY THOUSAND ONE HUNDRED THIRTY DOLLARS AND 35/100 ($120,130.55) as of April 1, 2007 plus accruing interest and late charges.

3

16. Pursuant to the terms of Lease 1 in the event Alliance Environmental defaults under the terms of Lease 1, plaintiff is still further entitled to immediate and permanent title and possession of the leased equipment, which is the subject of Lease 1.

17. Pursuant to the terms of Lease 1, in the event the defendants default, defendants are additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION

### (Loan 1: Breach of Contract)

18. Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

19. On or about June 30, 2006, Alliance Environmental entered into and executed a Master Loan and Security Agreement No. 1040954-001 ("Loan 1"), as Borrower, with Leaf Funding as Lender. Loan 1 granted Leaf Funding a lien to secure all existing and future obligations of Alliance Environmental to Leaf, in the following collateral:

"all inventory, supplies, accounts, general intangibles, chattel paper, instruments, goods, equipment, machinery, fixtures, furnishing, and all other personal property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations"

Attached hereto as **EXHIBIT E** is a true and accurate copy of Loan 1 and Attachment A.

20. On or about June 30, 2006 James Solano and Ligita Solano ("the Guarantors") entered into and executed an unconditional and continuing Personal Guaranty ("the Guaranty"), whereby they guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached

4

hereto as **EXHIBIT F** is a true and accurate copy of the Guaranty.

21. On or about June 30, 2006 ATG Equipment, Inc. ("ATG" or collectively with the other guarantors as "the Guarantors") entered into and executed an unconditional and continuing Guaranty, whereby it guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT G** is a true and accurate copy of the Guaranty.

22. On or about June 30, 2006 Alliance Technology (collectively with the other guarantors as "the Guarantors") entered into and executed an unconditional and continuing Guaranty, whereby it guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT H** is a true and accurate copy of the Guaranty.

23. Alliance Environmental defaulted under the terms of Loan 1 in that it has failed to make the required monthly payments.

24. The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

25. Pursuant to the terms of Loan 1, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

26. Plaintiff has declared Loan 1 in default and demanded the accelerated balance, plus late charges, for a total of ONE HUNDRED THIRTY THREE THOUSAND FOUR HUNDRED TWENTY THREE DOLLARS AND 36/100 ($133,423.36) as of April 1, 2007 plus accruing interest and late charges.

27. Pursuant to the terms of Loan 1 in the event Alliance Environmental defaults under the terms of Loan 1, plaintiff is still further entitled to immediate and permanent title and possession of

5

the collateral, which is the subject of Loan 1.

28.  Pursuant to the terms of Loan 1, in the event the defendants default, defendants are additionally liable to plaintiff for, <u>inter alia</u>, contractual attorneys' fees.

## AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION

### (Collateralized Guaranties: Breach of Contract)

29.  Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

30.  On or about June 30, 2006 Alliance Technology entered into and executed an unconditional and continuing Collateralized Guaranty, whereby it further guaranteed the obligations of Alliance Environmental then existing or thereafter incurred and further granted a lien to secure all existing and future obligations of Alliance Environmental to Leaf in the following collateral as follows:

> "all inventory, supplies, accounts, general intangibles, chattel paper, instruments, goods, equipment, machinery, fixtures, furnishing, and all other personal property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations"

Attached hereto as **EXHIBIT I** is a true and accurate copy of the Collateralized Guaranty.

31.  On or about June 30, 2006 ATG Equipment entered into and executed an unconditional and continuing Collateralized Guaranty, whereby it further guaranteed the obligations of Alliance Environmental then existing or thereafter incurred and further granted a lien to secure all existing and future obligations of Alliance Environmental to Leaf in the following collateral as follows:

> "all inventory, supplies, accounts, general intangibles, chattel paper, instruments, goods,

6

equipment, machinery, fixtures, furnishing, and all other personal property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations"

Attached hereto as **EXHIBIT J** is a true and accurate copy of the Collateralized Guaranty.

32.    Alliance Technology and ATG Equipment defaulted under the terms of the Collateralized Guaranties in that they have failed to make the required monthly payments.

33.  The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

34.  Pursuant to the terms of the Collateralized Guaranties, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

35.  Plaintiff has declared Lease 1 and Loan 1 in default and demanded the accelerated balances, plus late charges, for a total of TWO HUNDRED FIFTY THREE THOUSAND FIVE HUNDRED FIFTY THREE DOLLARS AND 91/100 ($253,553.91) as of April 1, 2007 plus accruing interest and late charges.

36.  Pursuant to the terms of Collateralized Guaranties in the event Alliance Technology and ATG Equipment default under the terms of Collateralized Guaranties, plaintiff is still further entitled to immediate and permanent title and possession of the collateral, which is the subject of the Collateralized Guaranties.

37.  Pursuant to the terms of Collateralized Guaranties, in the event the defendants default, defendants are additionally liable to plaintiff for, <u>inter alia</u>, contractual attorneys' fees.

7

## AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION

### (Restructure of Lease Agreement: Breach of Contract)

38. Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

39. On or about November 27, 2006 Alliance Environmental entered into and executed a Restructure of Lease Agreement whereby a new lien was placed on the collateral listed in the Schedule A to the Restructure of Lease Agreement and Guarantors James Solano and Ligita Solano consented to same. Attached hereto as **EXHIBIT K** is a true and accurate copy of the Restructure of Lease Agreement and Schedule A. Except as expressly modified in the Restructure of Lease Agreement, Loan 2 remained in full force and effect.

40. On or about November 27, 2006 Alliance Technology ("the Guarantors") entered into and executed an unconditional and continuing Guaranty with regard to the Restructure Agreement, whereby they guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT L** is a true and accurate copy of the Guaranty.

41. On or about November 27, 2006 ATG Equipment ("the Guarantors") entered into and executed an unconditional and continuing Guaranty with regard to the Restructure Agreement, whereby they guaranteed the obligations of Alliance Environmental then existing or thereafter incurred. Attached hereto as **EXHIBIT M** is a true and accurate copy of the Collateralized Guaranty.

42. Alliance Environmental defaulted under the terms of the Restructure Agreement in that it has failed to make the required monthly payments.

8

43. The plaintiff has demanded payment but the defendants refuse and continue to refuse to make payment of the remaining indebtedness.

43. Pursuant to the terms of the Restructure of Lease Agreement, upon a default the plaintiff may declare the entire accelerated balance to be immediately due and payable.

44. Plaintiff has declared the Restructure of Lease Agreement in default and demanded the accelerated balance, plus late charges, for a total of ONE HUNDRED THIRTY THREE THOUSAND FOUR HUNDRED TWENTY THREE DOLLARS AND 36/100 ($133,423.36) as of April 1, 2007 plus accruing interest and late charges.

45. Pursuant to the terms of the Restructure of Lease Agreement, in the event Alliance Environmental defaults under the terms of the Restructure of Lease Agreement, plaintiff is still further entitled to immediate and permanent title and possession of the collateral, which is the subject of the Restructure of Lease Agreement.

46. Pursuant to the terms of the Restructure of Lease Agreement, in the event the defendants default, defendants are additionally liable to plaintiff for, inter alia, contractual attorneys' fees.

### AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION

47. Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

48. Defendant(s) entered into the Lease and Loan and related documents full knowledge of plaintiff's reliance upon its representations therein and, indeed, it made said representations to induce plaintiff to rely thereon.

49. Plaintiff has been injured as a direct and proximate result of the defendant(s)' failure to honor the express representations in Lease 1, Loan 1, Collateralized Guaranties, and Restructure

9

Agreement and related documents.

50.    Based upon the foregoing, defendants are now estopped from disputing the representations in Lease 1, Loan 1, Collateralized Guaranties, and Restructure Agreement and the related documents.

### AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION

51. Plaintiff repeats, reiterates and realleges each and every allegation as set forth above with the same force and effect as if fully set forth herein.

52. As a result of defendants' conduct as set forth above, the defendants have been unjustly enriched.

53. Plaintiff is entitled to recovery under the doctrines of quasi-contract, quantum meruit and unjust enrichment.

WHEREFORE, plaintiff demands judgment against the defendants Alliance Environmental Technologies, Inc., James Solano, Ligita Solano, Alliance Technology Group, Inc. and ATG Equipment, Inc., jointly and severally, as follows:

a. On the First Count in the amount of ONE HUNDRED TWENTY THOUSAND ONE HUNDRED THIRTY DOLLARS AND 55/100 ($120,130.55) plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of the collateral which is the subject of Lease 1; and

b. On the Second Count in the amount of ONE HUNDRED THIRTY THREE THOUSAND FOUR HUNDRED TWENTY THREE DOLLARS AND 36/100 ($133,423.36) plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of the collateral which is the subject of Loan 1; and

10

c. On the Third Count in the amount of ONE HUNDRED THIRTY THREE THOUSAND FOUR HUNDRED TWENTY THREE DOLLARS AND 36/100 ($133,423.36) plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of the collateral which is the subject of the Collateralized Guaranties; and

d. On the Fourth Count in the amount of ONE HUNDRED THIRTY THREE THOUSAND FOUR HUNDRED TWENTY THREE DOLLARS AND 36/100 ($133,423.36) plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of the collateral which is the subject of Restructure Agreement; and

e. On the Fifth Count in the amount of TWO HUNDRED FIFTY THREE THOUSAND FIVE HUNDRED FIFTY THREE DOLLARS AND 91/100 ($253,553.91) plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of all the collateral and equipment which is the subject of the Loan 1, Lease 1, Restructure, Collateralized Guarantee agreements; and

f. On the Sixth Count in the amount of TWO HUNDRED FIFTY THREE THOUSAND FIVE HUNDRED FIFTY THREE DOLLARS AND 91/100 ($253,553.91) plus accruing interest, late charges, costs and attorneys' fees and for immediate and permanent title and possession of all the collateral and equipment which is the subject of the Loan 1, Lease 1, Restructure and Collateralized Guarantee agreements, and for the reasonable value of the monies advanced to defendants to date; and

g. On the First, Second, Third and Fourth Counts, an Order of the Court:

(i) restraining and enjoining defendants, their agents, employees, attorneys and such other person in active concert and participation with them, from selling, secreting, moving or disposing of

11

any or all of the collateral and equipment as defined in the Verified Complaint submitted herewith; and

(ii) requiring defendants to disclose to plaintiff the location of the non-receivables collateral, including but not limited to the machinery, equipment and inventory, and to give immediate possession and title of same to plaintiff; and

(iii) requiring the defendants to grant to plaintiff full and complete access to their premises for the purpose of inspecting and appraising same; and

(iv) requiring the defendants to segregate in an account controlled by plaintiff the proceeds of all accounts receivable to be held by plaintiff pending further order of the Court; and

(v) requiring the defendants to turn over to plaintiff all payments on account of the accounts receivable in their original form to be held by plaintiff pending further order of the Court; and

(vi) requiring the defendants to grant plaintiff full and complete access to all of their books and records relating to accounts receivable as may be required by plaintiff to identify said defendants' account debtors and the amounts owed by such account debtors to defendants; and

h. in the alternative to the relief requested in the sub-paragraphs above, appointing an agent of this Court to take possession of the collateral, including but not limited to, accounts receivable and inventory and any and all distribution or route contractual rights and the proceeds thereof, pending further order of this Court; and

i. Temporary and permanent title and possession of all of the defendants' accounts, accounts receivables, inventory, equipment, contract rights, instruments, chattel paper and general intangibles; and

j. Pending the issuance of the relief demanded in paragraph f and g above, a preliminary, and

12

thereafter if required, a permanent injunction granting and mandating the relief requested in paragraph f above; and

k. For such relief as to the Court seems equitable and just.

Dated: 11/12/07

Frank Peretore, Esq.
(Pursuant to NYCRR 130-1.1(a))
PERETORE & PERETORE, P.C.
Attorneys for the Plaintiff
110 Park Street
Staten Island, New York 10306
(718) 667-8785

13

**EXHIBIT A**



**LEAF Financial Corporation**

# MASTER LEASE AGREEMENT

This MASTER LEASE AGREEMENT ("Agreement") is dated as of April 11, 2006, and is by and between LEAF Funding, Inc., with offices located at 110 S. Poplar Street, Suite 101, Wilmington, DE 19801, its successors and assigns ("Lessor") and Alliance Environmental Technologies, Inc., a corporation having chief executive offices located at 1600 Arch Street, Philadelphia, PA 19103 ("Lessee"). Lessee is organized under the laws of the state of PA and has the following organizational ID#: _____. The parties hereto for good and valuable consideration and intending to be legally bound hereby agree as follows:

**1. LEASE.** This Agreement establishes the general terms and conditions under which Lessor may, from time to time, lease Systems (as hereinafter defined) to Lessee. The terms hereof shall be deemed to form a part of each Master Lease Schedule (each a "Lease") executed by the parties which references this Agreement. Items of "Equipment," "Licensed Materials," "Project Costs" and "Maintenance" shall be as identified in each Lease and, together with all other property described therein and all substitutions, replacements, parts, additions and accessories thereto shall be collectively referred to as a "System." Lessee hereby requests Lessor to purchase the System from the supplier(s) thereof (hereinafter called "Vendor") and to lease the System to Lessee on the terms and conditions contained herein. Each Lease shall constitute a separate lease agreement incorporating all the terms hereof. In the event of a conflict between the provisions of any Lease and the provisions hereof, the provisions of the Lease shall prevail.

**2. LEASE TERM AND PAYMENTS.** This Agreement shall become effective upon acceptance and execution by Lessor and shall remain effective at least until the expiration of the term of the last Lease hereunder. Each Lease shall become effective upon acceptance and execution by Lessor and shall be for the term provided therein. The term of each Lease shall commence on the "Commencement Date," as defined in the Lease with an interim term and "Base Term Commencement Date" as set forth therein and shall thereafter continue until all obligations of the Lessee under the Lease shall have been fully performed ("Lease Term"). The amount of the Lease Payments on each Lease ("Lease Payments") are based upon the estimated total cost of the System on the applicable Schedule. The Lease Payments shall be adjusted proportionately upward or downward if the actual total cost of the System on the applicable Lease exceeds or is less than the estimate, with such adjustment being confirmed in writing. Interim Rent and Base Term Rent shall be due and payable as set forth in the Lease. All payments made by or on behalf of Lessee hereunder shall be nonrefundable. LESSEE'S OBLIGATION TO PAY SUCH LEASE PAYMENTS SHALL BE ABSOLUTE AND UNCONDITIONAL AND IS NOT SUBJECT TO ANY ABATEMENT, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER. All payments hereunder shall be made to Lessor at its address specified above (or such other place as Lessor, in writing, directs) without notice or demand therefor. If the term of a Lease is extended, "Lease Term" shall be deemed to refer to all extensions thereof.

Whenever any payment is not made by Lessee within ten (10) days of when due, Lessee agrees to pay to Lessor, not later than one month thereafter, an amount equal to the lesser of seven and one half percent (7.5%) of such delayed payment or the maximum amount permitted by applicable law as compensation for Lessor's internal operating expenses arising as a result of such delayed payment. Such amount shall be payable in addition to all amounts payable by Lessee as a result of the exercise of any of the remedies herein provided.

**3. DELIVERY AND ACCEPTANCE.** As between Lessee and Lessor, delivery and installation arrangements and costs are the sole responsibility of Lessee. Lessee agrees to accept the System when delivered, installed and operating to Vendor's specifications and to execute the **Delivery and Acceptance Certificate** supplied by Lessor as evidence thereof. Lessee agrees to hold Lessor harmless from specific performance of this Agreement and from damages, if, for any reason, the Vendor fails to deliver, or delays in delivery of, the System so ordered or if the System is unsatisfactory for any reason whatsoever. Lessee's execution of the Delivery and Acceptance Certificate shall conclusively establish that the System covered thereby is acceptable to Lessee for all purposes of the Lease related thereto. If Lessee cancels or terminates a Lease prior to the Commencement Date or if Lessee fails or refuses to sign the Delivery and Acceptance Certificate within a reasonable time, not to exceed five (5) business days, after the System has been delivered, installed and is operating to Vendor's specifications, Lessor shall have the option of treating the Lease as cancelled by Lessee and Lessee shall automatically assume all of Lessor's rights and obligations as purchaser of the System, whether under an Acquisition Agreement or otherwise. If Lessee has entered into any purchase, licensing, maintenance or similar agreements with the Vendor (each an "Acquisition Agreement") covering the System or any portion thereof, Lessee transfers and assigns to Lessor all of Lessee's rights, but none of its obligations (except for Lessee's obligation to pay for the System, to the extent approved by Lessor, upon Lessor's acceptance of the Lease), with respect to the Acquisition

Agreement, including without limitation the right to take title to the System.

**4. SELECTION OF SYSTEM AND DISCLAIMER OF WARRANTY.** If the System is not properly installed, does not operate as represented or warranted by the Vendor, or is unsatisfactory for any reason, Lessee shall make any claim on account thereof solely against the Vendor and shall, nevertheless, pay Lessor all Lease Payments under the Lease and shall not set up against Lessee's obligations any such claims as a defense, counterclaim, set-off or otherwise. So long as Lessee is not in breach or default of this Agreement or any Lease hereunder, Lessor hereby assigns to Lessee any rights which Lessor may have against the Vendor for breach of warranty or other representation respecting any item of the System. All proceeds of any warranty recovery by Lessee from the Vendor of any item of the System shall first be used to repair or replace the affected item. NOTWITHSTANDING ANY PROVISION CONTAINED HEREIN TO THE CONTRARY, LESSEE DOES NOT WAIVE ANY RIGHTS OR REMEDIES IT MAY HAVE AGAINST THE VENDOR OF THE SYSTEM.

Lessee has selected both the System and the Vendor from whom Lessor covenants to purchase the System at Lessee's request. LESSEE ACKNOWLEDGES THAT LESSOR HAS NO EXPERTISE OR SPECIAL FAMILIARITY ABOUT OR WITH RESPECT TO THE SYSTEM. LESSEE AGREES THAT THE SYSTEM LEASED HEREUNDER IS LEASED "AS-IS" AND IS OF A SIZE, DESIGN AND CAPACITY SELECTED BY LESSEE AND THAT LESSEE IS SATISFIED THAT THE SAME IS SUITABLE FOR LESSEE'S PURPOSES, AND THAT LESSOR HAS MADE NO REPRESENTATION OR WARRANTY WITH RESPECT TO THE SUITABILITY OR DURABILITY OF SAID SYSTEM FOR THE PURPOSES AND USES OF LESSEE, OR ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT THERETO, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. LESSOR FURTHER DISCLAIMS ANY LIABILITY FOR LOSS, DAMAGE OR INJURY TO LESSEE OR THIRD PARTIES AS A RESULT OF ANY DEFECTS, LATENT OR OTHERWISE, IN THE SYSTEM WHETHER ARISING FROM THE APPLICATION OF THE LAWS OF STRICT LIABILITY OR OTHERWISE.

LESSEE ACKNOWLEDGES THAT NEITHER THE VENDOR NOR ANY SALESPERSON, EMPLOYEE, REPRESENTATIVE OR AGENT OF THE VENDOR IS AN AGENT OR REPRESENTATIVE OF LESSOR, AND THAT NONE OF THE ABOVE IS AUTHORIZED TO WAIVE OR ALTER ANY TERM, PROVISION OR CONDITION OF THIS AGREEMENT OR ANY LEASE HEREUNDER, OR MAKE ANY REPRESENTATION OR WARRANTY WITH RESPECT TO THIS AGREEMENT, ANY LEASE HEREUNDER OR THE SYSTEM LEASED HEREUNDER. REGARDLESS OF CAUSE, LESSEE WILL NOT ASSERT ANY CLAIM WHATSOEVER AGAINST LESSOR FOR LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL LESSOR BE RESPONSIBLE FOR ANY DAMAGES OR COSTS WHICH MAY BE ASSESSED AGAINST LESSEE IN ANY ACTION FOR INFRINGEMENT OF ANY UNITED STATES LETTERS PATENT OR COPYRIGHT. LESSOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS AGREEMENT OR ANY LEASE HEREUNDER FOR TAX OR ACCOUNTING PURPOSES.

**5. TITLE, PERSONAL PROPERTY AND LOCATION.** The Equipment is, and shall at all times be and remain the sole and exclusive property of Lessor, and Lessee, notwithstanding any trade-in or down payment made by Lessee or on its behalf with respect to the Equipment, shall have no right, title or interest therein or thereto, except as to the use thereof subject to the terms and conditions of this Agreement and the related Lease hereunder. Notwithstanding anything to the contrary in this Agreement or any Lease, neither this Agreement nor any Lease grants any right, title or interest in or to that portion of any System constituting or containing software and/or operation manuals, plans, specifications and documentation related thereto (collectively, "Licensed Materials"). Any rights that Lessee may have with respect to Licensed Materials shall arise only pursuant to license agreements between Lessee and the licensor(s) of such Licensed Materials (collectively, the "Licensors") which license agreements (the "Licenses") may be contained within the packaging associated with the System. All title to and ownership of the Licensed Materials (together with all rights in patents, copyrights, trade secrets and other intellectual property rights applicable thereto) are and shall remain in the Licensors during and after the term of this Agreement. Any use of the terms "sell," "purchase," "license," "lease," and the like in this Agreement or any Lease with respect to Licensed Materials shall be interpreted in accordance with this Section 5.

Lessee will not directly or indirectly create, incur, assume or suffer to exist any lien on or with respect to the System or Lessor's interest thereto, except such liens as may arise through the independent acts or omissions of the Lessor. Lessee, at its own expense, will promptly pay, satisfy or otherwise take such actions as may be necessary to keep the System free and clear of any and all such liens. The System

such liens. The System is, and at all times shall remain, personal property notwithstanding that the System or any item thereof may now be, or hereafter become, in any manner affixed or attached to, or imbedded in, or permanently resting upon real property or any improvement thereof or attached in any manner to what is permanent. If requested by Lessor prior to or at any time during the Lease Term, Lessee will obtain and deliver to Lessor waivers of interest or liens in recordable form, satisfactory to Lessor, from all persons claiming any interest in the real property on which an item of the System is installed or located.

The System shall be kept at the address designated in each Lease and shall not be removed therefrom without the prior written consent of the Lessor, which consent shall not be unreasonably withheld. Lessor may require plates or markings to be affixed to or placed on the Equipment indicating the Lessor's ownership of the Equipment.

**6. USE; MAINTENANCE AND INSPECTION.** Lessee shall use the System solely in the conduct of its business and in a careful and proper manner consistent with the requirements of all applicable insurance policies and shall permit only qualified personnel to operate the System. Lessee will not modify the System in any way without the prior written consent of Lessor, which consent shall not be unreasonably withheld. Lessee shall not attach or incorporate the Equipment or Licensed Materials to or in any other item of equipment or software in such a manner that the Equipment or Licensed Materials becomes or may be deemed to have become an accession to or a part of such other item of equipment or software. If any parts or accessories forming part of the System become worn out, lost, destroyed, damaged beyond repair or otherwise permanently rendered unfit for use, Lessee, at its own expense, shall within a reasonable time cause such parts or accessories to be replaced by replacement parts or accessories which are free and clear of all liens, encumbrances or rights of others and have a utility at least equal to the parts or accessories replaced. All equipment, Licensed Materials accessories, upgrades, parts and replacements for or which are added to or become attached to the System, which are essential to the operation of the System or which cannot be detached from the System without materially interfering with the operation of the System or adversely affecting the value and utility which the System would have had without the addition thereof, shall immediately become the property of Lessor, and shall be deemed incorporated in the System and subject to the terms of this Agreement and the related Lease as if originally leased hereunder. Lessee shall not make any material alterations to the System without the prior written consent of Lessor, which consent shall not be unreasonably withheld. Upon reasonable advance notice, Lessor shall have the right to inspect the System and all maintenance records with respect thereto, if any, at any reasonable time during normal business hours.

At its own expense, Lessee will cause the System to be kept, used and maintained as recommended by the Vendor and Vendor's maintenance manuals and plans by competent and duly qualified personnel in accordance with applicable governmental regulations, if any, and in as good operating condition as when delivered to Lessee hereunder, ordinary wear and tear resulting from proper use alone excepted. In the event the Lease Payments include the cost of maintenance and/or service being provided by Vendor, Lessee acknowledges that Lessor is not responsible for providing any required maintenance and/or service for the System. Lessee shall make all claims for service and/or maintenance solely to the Vendor and Lessee's obligation to make all required Lease Payments shall remain unconditional.

**7. ASSIGNMENT.** LESSEE MAY NOT ASSIGN THIS AGREEMENT, ANY LEASE OR THE RIGHTS HEREUNDER, NOR SHALL THE LESSEE SUBLEASE OR LEND THE SYSTEM OR SUBMIT IT TO BE USED BY ANYONE OTHER THAN LESSEE'S EMPLOYEES WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD. Lessor may at any time assign all or part of any interest in this Agreement or any Lease and in each item of the System and monies to become due to Lessor hereunder; and, Lessor may grant security interests in the System, subject to the Lessee's rights therein. In such events, all the provisions of this Agreement or any Lease hereunder for the benefit of Lessor shall inure to the benefit of and be exercised by or on behalf of such Assignee or transferee of any of Lessor's rights, title and interests hereunder (an "Assignee"), but the Assignee shall not be liable for or be required to perform any of Lessor's obligations to Lessee. The Lessor may direct that all Lease Payments due and to become due under this Agreement or any Lease hereunder and assigned by Lessor shall be paid directly to Assignee, upon notice of such assignment to Lessee. The right of the Assignee to the payment of the assigned Lease Payments, the performance of all Lessee's obligations and to exercise any other of Lessor's rights hereunder shall not be subject to any defense, counterclaim or set-off which the Lessee may have or assert against the Lessor, and the Lessee hereby agrees that it will not assert any such defenses, set-offs, counterclaims and claims against the Assignee. No such assignment by Lessor shall relieve Lessor of its obligations or limit or otherwise affect Lessee's rights and/or obligations hereunder.

**8. RETURN OF SYSTEM.** The Lessee shall, at its sole expense, surrender each item of the System then subject to any Lease hereunder at the expiration or earlier termination of the Lease Term by providing the required notice to Lessor and delivering the item to the Lessor at a location designated by the Lessor within the Continental United States. In the case of Licensed Materials, Lessee shall terminate its use of all Licensed Materials and assign to Lessor all of Lessee's

rights under the applicable Licenses. Lessee shall arrange for the return shipment of the System, including the Licensed Materials, and its insurance in transit in accordance with the Lessor's instructions and at the Lessee's sole expense.

When an item of the Licensed Materials or Equipment is surrendered to the Lessor it shall be in the condition and repair required to be maintained under this Agreement. It will also be free of all evidence of advertising or insignia placed on it by the Lessee and meet all legal and regulatory requirements and be free of all liens. If Lessor reasonably determines that an item of Licensed Materials or Equipment, once it is returned, is not in the condition required hereby, Lessor may cause the repair, service, upgrade, modification or overhaul of the item of Licensed Materials or Equipment to achieve such condition and upon demand, Lessee shall promptly reimburse Lessor for all amounts reasonably expended in connection with the foregoing. Upon request, Lessee shall certify in writing to Lessor that Lessee has ceased all use of the Licensed Materials.

Should Lessee not return the System (or any portion thereof) at the end of the Lease Term, or continue to use the Licensed Materials, Lessee shall continue to make Lease Payments to Lessor in the sum equal to the last Lease Payment and at the same intervals as set out in the Lease as a month-to-month lease term (or other term as designated by Lessor) until, with proper notice, the System is returned by Lessee. The acceptance of said Lease Payments by Lessor shall not waive Lessor's right to have the System promptly returned to Lessor pursuant to the provisions hereof, nor shall the acceptance of said Lease Payments be deemed to be an extension of the Lease Term.

**9. RISK OF LOSS.** Lessee hereby assumes and shall bear the entire risk of loss (including theft, requisition of use, erasure or inoperability) or destruction of or damage to the System from any and every cause whatsoever, whether or not insured, until the System is returned to Lessor. No such loss or damage shall relieve Lessee from any obligation under this Agreement or any Lease hereunder, which shall continue in full force and effect. In the event of damage to or loss or destruction of the System (or any item thereof), Lessee shall promptly notify Lessor in writing of such fact and shall, at the option of Lessor, (a) place the same in good repair, condition and working order, (b) replace the Licensed Materials and/or Equipment with like Licensed Materials and/or Equipment in good repair, condition and working order, acceptable to Lessor and transfer clear title to or a right to use, as appropriate, such Licensed Materials and/or replacement Equipment to Lessor, whereupon such Licensed Materials and/or Equipment shall be subject to the Lease and be deemed the System for purposes hereof, or (c) on the due date for the next Lease Payment or upon the expiration of the Lease, whichever first occurs, pay to Lessor the present value of the total of all unpaid Lease Payments for the entire Lease Term plus the estimated fair market value of the System at the end of the originally scheduled Lease Term or the agreed upon purchase option price, if any, all of which shall be discounted to the date of payment by Lessee at an annual rate equal to the lesser of four percent (4%) or the rate then available for United States Treasury obligations having an average life equal to one half of the remaining Lease Term ("Present Value Rate"), whereupon the Lease shall terminate with respect thereto.

**10. INSURANCE.** Prior to the Lease Commencement Date, Lessee shall obtain, maintain and keep the System insured against all risks of loss or damage, in an amount not less than the replacement cost or Stipulated Loss Value of the System, whichever is greater, without deductible and without co-insurance. Lessee shall maintain such insurance coverage for the entire Lease Term. Lessee shall also obtain and maintain for the entire Lease Term, comprehensive public liability insurance covering liability for bodily injury, including death, and property damage resulting from the purchase, ownership, leasing, maintenance, use, operation or return of the System with a combined single limit of not less than Two Million Dollars ($2,000,000) per occurrence. All said insurance shall be in a form and an amount and with companies reasonably satisfactory to Lessor. Lessor, its successors or assigns, shall be the sole named loss payee with respect to insurance for damage to or loss of the System and shall be named as an additional insured on the public liability insurance. Lessee shall pay all premiums for such insurance and shall deliver to Lessor certificates of insurance, or other evidence satisfactory to Lessor evidencing the insurance required hereby, along with proof, satisfactory to Lessor, of the payment of the premiums for such insurance policies. All insurance shall provide for at least thirty (30) days advance written notice to Lessor before any cancellation, expiration or material modification thereof and also provide that no act or default of any person other than Lessor, its agents or those claiming under Lessor, will affect Lessor's right to recover under such policy or policies in case of loss. Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact (which power shall be deemed coupled with an interest) to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. Unless Lessee is in default, Lessee may with the prior written approval of Lessor, settle and adjust all such claims. Lessee agrees if Lessee shall fail to procure, maintain, and pay for such insurance, Lessor shall have the right, but not the obligation, to obtain such insurance on behalf of and at the expense of Lessee. In the event Lessor does obtain such insurance, Lessee agrees to pay all costs thereof with the next Lease Payment or as specified by Lessor. Alternatively, Lessor may forego acquiring insurance on Lessee's behalf and charge Lessee a monthly administrative fee for Lessor's costs in monitoring and administering such deficiency and Lessee shall remain liable for any damage to or caused by the System.

10-13-04

11. INDEMNIFICATION. Lessee assumes and agrees to indemnify, defend and keep harmless Lessor, its agents and employees, from and against any and all losses, damages, injuries, claims, demands and expenses, including legal, consulting and expert expenses (other than such as may directly and proximately result from the gross negligence or willful misconduct of Lessor, its agents or employees), arising on account of the ordering (whether by Acquisition Agreement or otherwise), acquisition, delivery, installation or rejection of the System, the possession, maintenance, use, condition (including without limitation, latent and other defects, any claim in tort for strict liability, and any claim for patent, trademark or copyright infringement) or operation of any item of the System, and by whomsoever used or operated, during the Lease Term with respect to that item of the System, the loss, damage, destruction, environmental impact, removal, return, surrender, sale or other disposition of the System, or any item thereof. Lessor shall give Lessee notice of any claim or liability hereby indemnified against. The obligations contained in this paragraph continue beyond the termination of the Lease if the liability occurred during the Lease Term.

12. EVENTS OF DEFAULT. The term "Event of Default" shall mean any one or more of the following:

(a) Lessee shall fail to make any Lease Payment, or any other payment under any Lease, as it becomes due and such failure is not cured within ten (10) days; or (b) Lessee shall fail to perform or observe any of the covenants set forth in Paragraph 10; or (c) Lessee shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by it hereunder or in any Lease and such failure is not cured within 30 days after the date of notice thereof by Lessor to Lessee; or (d) Lessee shall enter into any transaction of merger or consolidation in which it is not the surviving entity or sell, transfer or otherwise dispose of all or substantially all of its assets ("Assets") unless the surviving entity or the entity acquiring such Assets assumes all the duties and obligations of Lessee hereunder and which merger, consolidation, sale or transfer must be approved in writing by Lessor; or (e) (i) Lessee or any guarantor of Lessee's obligations hereunder ("Guarantor") shall commence any action (A) for relief under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, or (B) seeking appointment of a receiver, custodian or other similar official for it or for its Assets or making a general assignment for the benefit of its creditors; or (ii) there shall be commenced against Lessee any action (A) of a nature referred to in clause (i) which results in the entry of an order for relief or any such other relief and remains undismissed or undischarged for a period of 30 days, or (B) seeking attachment, execution or similar process against its assets which results in the entry of an order for any such relief which shall not be vacated or discharged within 30 days from the entry thereof; or (iii) Lessee shall generally not, or be unable to, pay its debts as they come due; or (f) Lessee or any Guarantor shall die or (if an entity) liquidate or dissolve itself or be liquidated or terminated; or (g) Any representation or warranty made by Lessee herein or otherwise furnished Lessor in connection with this Agreement or any Lease hereunder shall prove at any time to have been untrue or misleading in any material respect; or (h) Lessee or any Guarantor defaults on any indebtedness for borrowed money, lease, or installment sale obligation to Lessor or any affiliate of Lessor when any applicable grace period for such obligation has expired; or (i) Lessee or any Guarantor defaults on any indebtedness for borrowed money, lease, or installment sale obligation, in each case when any applicable grace period for such obligation has expired and the lender, lessor or creditor has commenced to exercise any remedy, but only if the indebtedness or other obligation is in an amount equal to or in excess of $50,000; or (j) Lessor shall reasonably deem itself insecure as a result of a material adverse change in Lessee's financial condition, operations or ownership; or (k) Lessee shall default in its obligations under a License.

13. REMEDIES. Upon the occurrence of any Event of Default, Lessor may declare this Agreement or any Lease hereunder to be in default and exercise any one or more of the following remedies:

(a) declare the entire unpaid balance of Lease Payments for the unexpired term of the Lease hereunder immediately due and payable and similarly accelerate the balances due under any other Leases between Lessor and Lessee without notice or demand, (b) sue for and recover all Lease Payments and other monies due and to become due under the Lease hereunder, plus the estimated fair market value of the System at the end of the originally scheduled Lease Term or any agreed upon Purchase Option, all of which shall be discounted to the date of default at the Present Value Rate (defined in Section 9 hereof), but only to the extent permitted by law, (c) charge Lessee interest on all monies more than thirty days past due Lessor at the lesser of one and one half percent (1.5%) per month or the maximum rate permitted by law from the date of default until paid, (d) require Lessee to assemble all Equipment and Licensed Materials at Lessee's expense, at a place reasonably designated by Lessor and/or (e) remove any physical obstructions for removal of the Equipment from the place where the Equipment is located and take possession of any or all items of System, without demand or notice, wherever same may be located, disconnecting and separating all such items of the System from any other property. Lessee hereby waives any and all damages occasioned by such retaking except such damages as may be caused by Lessor's gross negligence or willful misconduct. Lessor may, at its option, use, ship, store or repair any or all items of the System so removed and shall sell, lease or otherwise

shall sell, lease or otherwise dispose of any such System at a private or public sale. In the event Lessor disposes of the System, Lessor shall give Lessee credit for any sums received by Lessor from the sale or lease of the System after deduction of the expenses of sale or lease. Lessee shall also be liable for and shall pay to Lessor (i) all expenses incurred by Lessor in connection with the enforcement of any of Lessor's remedies, including all expenses of repossession, storing, shipping, repairing and selling the System, and (ii) Lessor's reasonable attorney's fees and expenses. Lessor and Lessee acknowledge the difficulty in establishing a value for the unexpired Lease Term and owing to such difficulty agree that the provisions of this paragraph represent an agreed measure of damages and are not to be deemed a forfeiture or penalty.

All remedies of Lessor hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of the Lessor to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Agreement or any Lease hereunder. A waiver of default shall not be a waiver of any other or subsequent default. Lessor's recovery hereunder shall in no event exceed the maximum recovery permitted by law. Notwithstanding any provision contained herein to the contrary, the termination or cancellation of a Lease shall not effect Lessee's duty to perform Lessee's obligations under such Lease to Lessor in full.

14. LAWS, REGULATIONS AND TAXES. Lessee shall comply with all laws, regulations and orders relating or pertaining to the System, this Agreement or any Lease hereunder and Lessee shall be responsible for, as and when due, and shall indemnify and hold Lessor harmless from and against all present and future taxes and other governmental charges, or any increases therein (including, without limitation, sales, use, leasing and stamp taxes and license and registration fees) and amounts in lieu of such taxes and charges and any penalties or interest on any of the foregoing, imposed, levied upon, in connection with, or as a result of the purchase, ownership, delivery, leasing, possession or use of the System, or based upon or measured by the Lease Payments or receipt with respect to this Agreement or any Lease hereunder. Lessee shall not, however, be obligated to pay any taxes on or measured by Lessor's net income. Lessee authorizes Lessor to add to the amount of each Lease Payment any sales, use or leasing tax that may be imposed on or measured by such Lease Payment. Lessee shall pay Lessor on demand, as additional rent, the amount of the personal property tax required to be paid by Lessor as owner of the System, plus reasonable costs incurred in collecting and administering any taxes, assessments or fees and remitting them to the appropriate authorities. In the event Lessee does not pay all sums specified above, Lessor has the right, but not the obligation, to pay the same. If Lessor shall so pay any of the aforementioned, then the Lessee shall remit such amount with the next Lease Payment. Upon direction by Lessor, Lessee shall file the personal property tax declaration; pay the personal property tax for each System location and forward to Lessor at Lessor's request a copy of the personal property tax declaration listing the System. The obligations contained in this Section shall continue beyond the termination of the Lease if the obligations occurred during the Lease Term.

15. FURTHER ASSURANCES, UCC FILINGS. Lessee shall execute and deliver to Lessor upon Lessor's request such further and additional documents, instruments and assurances as Lessor deems necessary (a) to acknowledge and confirm, for the benefit of Lessor or any Assignee, all of the terms and conditions of all or any part of this Lease and Lessor's or Assignee's rights with respect thereto, and Lessee's compliance with all of the terms and provisions hereof and (b) to preserve, protect and perfect Lessor's or Assignee's right, title or interest hereunder and in any System, including, without limitation, such Uniform Commercial Code ("UCC") financing statements or amendments, control agreements, corporate resolutions, certificates of compliance, notices of assignment or transfers of interests, and restatements and reaffirmations of Lessee's obligations and its representations and warranties with respect thereto as of the dates requested by Lessor from time to time. In furtherance thereof, Lessor may file or record this Lease or a memorandum or a photocopy hereof (which for the purposes hereof shall be effective as a financing statement) so as to give notice to third parties, and Lessee hereby irrevocably authorizes Lessor to file and record, and appoints Lessor as its attorney-in-fact to execute (if applicable), file and record, UCC financing statements, amendments thereto and other lien recordation documents with respect to the System, ratifies such authorization and appointment with respect to any UCC financing statements or amendments thereto prior to the date of any Lease, and Lessee agrees to pay or reimburse Lessor for any lien searches, filing, recording or stamp fees or taxes arising from or relating to any such filings and for Lessor's other documentation costs. Lessee hereby covenants and agrees that it shall not file any corrective or termination statement with respect to any UCC financing statements recorded by or for the benefit of Lessor with respect to the Equipment without Lessor's prior written consent.

It is the intent of the parties that each Lease is a true lease, and the filing of a financing statement under the UCC or other applicable law shall not be construed as evidence that any security interest was intended to be created, but only to give public notice of Lessor's ownership of the System. Lessee hereby grants to Lessor, to secure the payment and performance in full of all of Lessee's

Lessee's obligations under the Leases, a security interest in all items of System subject to a Lease in which Lessee may now or hereafter have rights, and all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins) for such goods, together with proceeds of all of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (the "Collateral"), provided that with respect to any Lease, the foregoing grant of a security interest is made on a precautionary basis and shall not of itself be a factor in determining whether the Collateral secures an obligation or whether the Lease creates a security interest.

16.    LESSEE REPRESENTATIONS AND WARRANTIES.    Lessee hereby represents, warrants and covenants to Lessor the following with respect to each Lease as of the date Lessee executes the Delivery and Acceptance Receipt related thereto: (a) Lessee is organized and validly existing under the laws of the state of its organization, with adequate power and capacity to enter into the Lease, all documents related to the purchase of the System and any other documents required to be delivered in connection with the Lease or the System (hereinafter "Documents") and is duly qualified to do business wherever necessary to carry on its present business, including all states where the System is to be located, and Lessee will not change its form or state of organization without the prior written consent of Lessor; (b) the Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except as may be limited under applicable bankruptcy and insolvency laws; (c) no approval, consent or withholding of objections is required from any federal, state or local governmental authority or instrumentality with respect to the entry into or performance by Lessee of the Documents, except such as have already been obtained; (d) the entry into and performance by Lessee of its obligations under the Documents will not (i) violate any judgment, order, law or regulation applicable to Lessee or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any item of the System pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than the Lease or any purchase money security interest retained by any supplier) to which Lessee is a party; (e) there are no suits or proceedings pending or threatened in court or before any regulatory commission, board or other administrative governmental agency against or affecting Lessee, which will have a material adverse effect on the ability of Lessee to fulfill its obligations under the Lease; and (f) the balance sheet and statement of income of Lessee, or of any consolidated group of which Lessee is a member, heretofore delivered to Lessor have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Lessee or the consolidated group of companies of which Lessee is a member on and as of the date thereof and the results of its or their operations for the period or periods covered thereby. Since the date of such balance sheet and statement of income there has been no material adverse change in the financial or operating condition of Lessee or of its consolidated group. Lessee hereby warrants and represents that the System will be used for business purposes, and not for personal, family or household purposes. Lessee acknowledges that Lessor has relied upon this representation in entering into this Agreement and each Lease hereunder.

17.    NOTICES.    Written notices to be given hereunder shall be deemed to have been given when delivered personally or deposited in the United States mails or nationally recognized delivery service, postage prepaid, addressed to such party at its address set forth above or at such other address as such party may have subsequently provided in writing.

18.    SUPPLIER'S CONTRACT AND LESSEE'S WAIVERS. Lessor and Lessee agree that each Lease is a Finance Lease as that term is defined in Article 2A of the UCC. Lessee acknowledges that Lessor has apprised Lessee of the identity of the System supplier. Lessor hereby notifies Lessee that Lessee may have rights pursuant to the contract with the supplier and the Lessee may contact the supplier for a description of any rights or warranties that Lessee may have under this contract. Lessee hereby waives any and all rights and remedies granted Lessee by Sections 303 and 508 through 522 of Article 2A of the UCC. The waivers contained herein shall not constitute a waiver by Lessee of any of its rights or remedies against the Vendor of the System.

19.    FINANCIAL STATEMENTS. Lessee agrees to submit financial statements or tax returns if its financial statements are unaudited within 90 days from the end of its fiscal year and Lessee warrants to Lessor that all financial statements furnished and to be furnished have been and will be prepared in accordance with generally accepted accounting principles, are an accurate reflection of Lessee's financial condition and that there has been no material adverse change in the financial condition of Lessee or any guarantor of Lessee's obligations since the dates of preparation and submission of the financial statements submitted to Lessor. Lessee agrees to deliver to Lessor at any time or times hereafter such information or documents, including, without limitation, certified resolutions, financial statements and legal opinions, as Lessor may request.

20.    CHOICE OF LAW.    This Agreement and each Lease hereunder shall be deemed to have been made in Delaware and, except for local filing requirements

and laws relating to conflict of laws, shall be governed by and construed in accordance with the laws of the State of Delaware. Lessee hereby consents to and agrees that personal jurisdiction over Lessee and subject matter jurisdiction over the System shall be with the state or federal courts in Delaware and consents to provision of this Agreement or any Lease hereunder. Lessee agrees that service of process in any action or proceeding may be duly effected upon Lessee by mailing such process via certified mail, return receipt requested. Lessee also agrees to waive its right to a trial by jury.

21.    ENTIRE AGREEMENT, NON-WAIVER AND SEVERABILITY.  This Agreement and each Lease hereunder contain the entire agreement and understanding between Lessee and Lessor relating to the subject matter of each Lease.  No agreements or understandings shall be binding on the parties hereto unless set forth in writing and signed by the parties. All obligations of the Lessee, if more than one, shall be joint and several. No waiver by Lessor of any breach or default shall constitute a waiver of any additional or subsequent breach or default by Lessor nor shall it be a waiver of any of Lessor's rights. Any provision of this Agreement or any Lease hereunder which for any reason may be held unenforceable in any one jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability without invalidating the remaining provisions of this Agreement or any Lease hereunder, and any such unenforceability in any one jurisdiction shall not render such provision unenforceable in any other jurisdiction. Any signature, execution and delivery of any document or instrument may be satisfied, in Lessor's sole discretion and to the extent permitted by the UCC, by authentication of such document or instrument as a record within the meaning of Article 9 of the UCC.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives as of the date first above written.

LESSEE:    Alliance Environmental Technologies, Inc.

By: _____

Print Name: _____ J. Solano _____

Title: _____ V. P. _____

Date: _____ 4-14-06 _____

LEAF FUNDING, INC.

By: _____

Print Name: _____

Title: _____ VP of OPS _____

Date: _____ 4/27/06 _____



**LEAF**
**Financial**
**Corporation**

**Addendum**
**To**
**Master Lease Agreement**

This Addendum is made part of that certain Master Lease Agreement dated as of April 11, 2006 ("Master Lease") by and between LEAF Funding, Inc. ("Lessor") and Alliance Environmental Technologies, Inc. ("Lessee").  Capitalized terms used but not defined will have the meaning given to them in the Master Lease.  If there is any conflict between the terms of this Addendum and the terms of the Master Lease, the terms of this Addendum will control and prevail.

1.  Your lease payment for your Master Lease Schedule 1 shall reflect a lease payment of  $6,537.68.

This Addendum supplements and amends the Master Lease only to the extent and in the manner set forth, and in all other respects, the Master Lease will remain in full force and effect.

| LESSEE: Alliance Environmental Technologies, Inc. | LEAF FUNDING, INC. |
|---|---|
| By: | By: |
| Print Name: James Solmo | Print Name: |
| Title: V.P | Title: VP of OPS |
| Date: 4/27/06 | Date: 4/27/06 |

Page 1 of 1                    10-15-04

### MASTER LEASE SCHEDULE

This Master Lease Schedule No. 1 ("Lease") is by and between LEAF Funding, Inc. ("Lessor") and Alliance Environmental Technologies, Inc.("Lessee") and incorporates the terms and conditions of that certain Master Lease Agreement dated as of April 11, 2006 between Lessor and Lessee ("Master Lease"). Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the following described items of Equipment, Licensed Materials, Maintenance and/or Project Costs (collectively, the "System") for the Lease Term and on terms and conditions set forth herein. The Lease shall become effective as against Lessor upon Lessor's execution hereof.

1. SYSTEM DESCRIPTION: (see Attachment A)

SYSTEM LOCATION: 1600 Arch Street                    BILLING ADDRESS (if other than System location):

        Philadelphia, PA  19103

2. LEASE TERM: The Lease shall commence on the day that Lessee executes a Delivery and Acceptance Certificate with respect to the System ("Commencement Date"). The Base Lease Term of the Lease shall be for the term indicated below and shall commence on the first day of the calendar month following the Commencement Date ("Base Term Commencement Date").

Base Lease Term: 24 months.

3. LEASE PAYMENTS:

(a) Base Term Rent consists of the following monthly payments:

| Number | Amount | Taxes | Total |
|--------|--------|-------|-------|
| 24 | $4487.12 | TBD | $4487.12 |

The first installment of Base Term Rent shall be due and payable upon the earlier of (i) the date specified in Lessor's invoice therefor, or (ii) the Base Term Commencement Date.

(b) Interim Rent is due and payable in full on the date specified in Lessor's invoice(s) therefor and shall be computed by dividing one payment of Base Term Rent by thirty (30) and multiplying the result by the number of days from and including the Commencement Date to the day preceding the Base Term Commencement Date.

(c) On or before the Commencement Date, Lessee shall pay Lessor an amount equal to $0.00 ("Advance Payment"). The Advance Payment shall be applied to Lessee's first Base Term Rent Payment, with any balance to be applied to the subsequent Base Term Rent payments in the inverse order of their accrual.

4. LEASE END OPTIONS: Provided no Event of Default shall have occurred and remain uncured, Lessee may upon the expiration of the Base Lease Term exercise any one of the following options with respect to not less than all items of Equipment and Licensed Materials leased hereunder, (i) return the System to Lessor, (ii) extend the Lease Term at the then fair rental value ("Fair Rental Value") for an extension term the length of which shall be determined by agreement between Lessee and Lessor or (iii) purchase the System for cash at the System's then fair market value ("Fair Market Value"). Lessee agrees to provide Lessor with written notice of Lessee's decision not less than 90 days prior to the expiration of the Base Lease Term. If Lessee fails to give Lessor 90 days prior written notice, the Lease Term shall automatically be extended without notice to Lessee upon the same terms and conditions for an additional 90 days and may be terminated thereafter upon 90 days prior written notice to Lessor. Upon receipt of Lessee's notice of termination and prior to the return of the System, Lessor shall be entitled to expose the System for resale or lease at the Lessee's premises during reasonable business hours (so long as such exposure does not unreasonably interfere with Lessee's business operations). If by proper notice Lessee elects to purchase the System and upon receipt by Lessor of the Fair Market Value and all other sums due hereunder, Lessor shall convey all of Lessor's right, title and interest in and to the Equipment to Lessee free of liens and encumbrances created by Lessor on an AS-IS, WHERE-IS basis and without warranty and permit Lessee to continue to use the Licensed Materials in accordance with the applicable License(s). Fair Market Value and Fair Rental Value shall mean an amount which would obtain in an arm's-length transaction between an informed and willing buyer/lessee (other than a dealer) and an informed and willing seller/lessor under no compulsion to sell or lease (assuming for this purpose that the System shall have been maintained in accordance with this Lease) and will be determined by agreement between Lessor and Lessee.

5. INDEX RATE: The Lease Payments set forth in Section 3 hereof are based upon two (2) year United States Treasury obligations, which had an annual yield to maturity of 5.33% ("Index Rate"). Lessor reserves the right to adjust the Lease Payments to reflect changes in excess of five (5) basis points in the Index Rate as reported in The Wall Street Journal on the Commencement Date (or next business day if the Commencement Date is not a business day). The amount of any such adjustment shall be determined by increasing the implicit rate of this Schedule by one (1) basis point for every basis point increase in the Index Rate. Lessor will provide Lessee with a written notice of any adjustment in the Lease Payments.

6. ADDITIONAL PROVISIONS: (None)

| LESSEE: Alliance Environmental Technologies, Inc. | LEAF FUNDING, INC. |
|---|---|
| By: | By: |
| Print Name: _J. Salaro_ | Print Name: |
| Title: _V. P._ | Title: |
| Date: _4/14/06_ | Date: |

| (To Be Completed By Lessor When Known) | | |
|---|---|---|
| Lease #: | Commencement Date: | Base Term Commencement Date: |

ATTACHMENT A
TO MASTER LEASE SCHEDULE NO. 1
ISSUED PURSUANT TO THAT CERTAIN MASTER LEASE
AGREEMENT DATED APRIL 11, 2006
BY AND BETWEEN
ALLIANCE ENVIRONMENTAL TECHNOLOGIES, INC. ("LESSEE") AND
LEAF FUNDING, INC. ("LESSOR")

### SYSTEM DESCRIPTION:

1 -- 2001 Freightliner -- Mdl:ML60 w/24' Morgan body (VIN#  1FVABPAK71HH00034)
10- 2005 Cheetah Double Drop Trailers (Vin #s:  5EF2SC4075B761298, 5EF2SC4095B761299, 5EF2SC4015B761300,
    5EF2SC4035B761301, 5EF2SC4005B761305, 5EF2DF4205B761186, 5EF2DF4235B761179, 5EF2DF42X5B761180,
    5EF2DF4225B761187, and 5EF2DF4245B761188)

| LESSOR: LEAF FUNDING, INC. | LESSEE: Alliance Environmental Technologies, Inc. |
|---|---|
| By: | By: |
| Print Name: _____ VP of OPS, | Print Name:  J. Solano |
| Title: | Title:  V. P |
| Date:  4/27/06 | Date:  4-14-06 |

© LEAF Funding, Inc. 2003, all rights reserved.     Page 3 of 3     4-23-03

**EXHIBIT B**



**LEAF**
**Financial**
**Corporation**

## PERSONAL GUARANTY

THIS PERSONAL GUARANTY, dated as of April 11, 2006 ("Guaranty"), is made by the undersigned individual(s), each having the Social Security Number and personal residence set forth under such signature (each a "Guarantor"). In order to induce LEAF Funding, Inc. ("LEAF") to enter into or extend certain financial accommodations from time to time with Alliance Environmental Technologies, Inc. ("Customer"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Customer. If more than one person executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. Guaranty of Payment and Performance. Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer at any time owing to LEAF, whether direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Customer does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF.

Section 2. Representations, Warranties and Covenants.
2.1 Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a) Guarantor is not a minor and has full power and authority to enter into and perform his or her obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantor of this Guaranty do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which he or she is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on the ability of Guarantor to perform his or her obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2 Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF such information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

**Section 3.  Waiver of Precondition, Suretyship Defenses.**  Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following:  any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Customer or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever.  Guarantor hereby covenants that by his or her agreement under this Guaranty he or she shall not be discharged from his or her obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge.  Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Customer, Guarantor or others; (ii) any change in the ownership of Customer; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument.  Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

**Section 4.  Relation with Customer, Release of Collateral.**  LEAF may, without notice to Guarantor, deal with the Customer in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Customer such extensions of time to perform any act or acts as may seem advisable to LEAF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder.  No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

**Section 5.  Debt Subordination.**  All debts and liabilities, present and future of the Customer to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Customer, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred.  This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request.  Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantor may receive and Customer may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Customer.  Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

**Section 6.  Waiver of Subrogation.**  Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Customer, or any other person having any manner of liability for Customer's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

**Section 7.  Events of Default.**  Each of the following events shall constitute an Event of Default under this Guaranty: (i) if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor or this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Customer or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "**Default**"), then the Obligations of Customer shall, at the sole option of LEAF, be deemed to be accelerated  and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts

9-21-04

with respect to such Obligations), irrespective of whether a Default exists relating to Customer, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Customer, and (Z) promptly perform all other Obligations.  Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law.  If LEAF is required to return any payment made to LEAF by or on behalf of Customer, whether as a result of Customer's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled.  No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

### Section 8.  Miscellaneous.

8.1  This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Customer to LEAF.  Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

8.2  Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby.  Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

8.3  This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law.  This Agreement shall be binding upon Guarantor and its successors and assigns.  LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee").  Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be duly executed and delivered as of the date set forth above.

| GUARANTOR: JAMES SOLANO | GUARANTOR: LIGITA SOLANO |
|---|---|
| SIGNATURE: | SIGNATURE: _Ligita Solano_ |
| PRINT NAME: | PRINT NAME: 421 |
| HOME ADDRESS: 421 No Longbeach Rd | HOME ADDRESS: 421 No longbead Rd |
| Rockville. N.Y. 11570 | Rockville N.Y. 11570 |
| SOCIAL SECURITY #: 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 | SOCIAL SECURITY #: |
| | |

9-21-04

STATE OR COMMONWEALTH OF: Pennsylvania :
: ss.
COUNTY OF: Philadelphia :

On this 18 day of April , 200 6 , before me, a notary public, the undersigned JAMES SOLANO (name), as an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she as an individual, executed the foregoing Personal Guaranty for the purposes therein contained by signing his or her name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

NOTARY PUBLIC

STATE OR COMMONWEALTH OF: Pennsylvania :
: ss.
COUNTY OF: Philadelphia :

On this 18 day of April , 200 6 , before me, a notary public, the undersigned Lizita Solano (name), as an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she as an individual, executed the foregoing Personal Guaranty for the purposes therein contained by signing his or her name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

NOTARY PUBLIC

Notarial Seal
Tonya Davis, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Oct. 22, 2006
Member, Pennsylvania Association Of Notaries

9-21-04

**EXHIBIT C**



**LEAF Financial Corporation**

# GUARANTY

THIS GUARANTY, dated as of April 11, 2006 ("Guaranty"), is made by Alliance Technology Group, Inc., an organization having its principal place of business at 1600 Arch Street, Philadelphia, PA 19103 ("Guarantor").

In order to induce **LEAF Funding, Inc.** ("LEAF") to enter into or extend certain financial accommodations from time to time with Alliance Environmental Technologies, Inc. ("Customer"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Customer. If more than one entity executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. <u>Guaranty of Payment and Performance.</u>  Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer at any time owing to LEAF, whether direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Customer does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF.

Section 2. <u>Representations, Warranties and Covenants.</u>
2.1 Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a) Guarantor is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has full power and authority to enter into and perform its obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantor of this Guaranty have been duly authorized by all necessary action on the part of Guarantor, are not inconsistent with its organizational documents, do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which it is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on the ability of Guarantor to perform its obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

9-2-04

2.2  Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF: (i) within 120 days after the close of each fiscal year of Guarantor occurring after the date hereof, an audited balance sheet of Guarantor at and as of the end of such fiscal year, together with an audited statement of income of Guarantor for such fiscal year, all prepared in accordance with generally accepted accounting principles consistently applied, and (ii) from time to time, such other information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

Section 3.  Waiver of Precondition, Suretyship Defenses.  Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Customer or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever.  Guarantor hereby covenants that by its agreement under this Guaranty it shall not be discharged from its obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Customer, Guarantor or others; (ii) any change in the ownership of Customer; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument.  Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

Section 4.  Relation with Customer, Release of Collateral.  LEAF may, without notice to Guarantor, deal with the Customer in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Customer such extensions of time to perform any act or acts as may seem advisable to LEAF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder.  No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

Section 5.  Debt Subordination.  All debts and liabilities, present and future of the Customer to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Customer, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred.  This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request.  Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantor may receive and Customer may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Customer.  Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

Section 6.  Waiver of Subrogation.  Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Customer, or any other person having any manner of liability for Customer's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

Section 7.  Events of Default.  Each of the following events shall constitute an Event of Default under this Guaranty: (i)If there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor or this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Customer or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "**Default**"), then the Obligations

9-2-04

of Customer shall, at the sole option of LEAF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such Obligations), irrespective of whether a Default exists relating to Customer, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Customer, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law. If LEAF is required to return any payment made to LEAF by or on behalf of Customer, whether as a result of Customer's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

### Section 8. Miscellaneous.

8.1 This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Customer to LEAF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

8.2 Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

8.3 This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantor and its successors and assigns. LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, the undersigned, pursuant to due corporate, limited liability company or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth above.

GUARANTOR:  Alliance Technology Group, Inc.

BY: _____

PRINT NAME:  J Soliano

TITLE:  V. P

GUARANTOR'S TAX ID#:  20-0508445

9-2-04

STATE OR COMMONWEALTH OF: *Pennsylvania* :

COUNTY OF: *Philadelphia* :
ss.

On this *19th* day of *April*, 200 *6*, before me, a notary public, the undersigned authorized representative, *James Solano* (name) personally appeared and acknowledged himself/herself to be the *VICE - PRESIDENT* (title) of *ALLIANCE TECHNOLOGY GROUP, INC.* (organization name), a _____ (type of organization), and that he/she as such representative, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing in the name of the organization by himself/herself as such representative.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

*Bernadette K Korb*
NOTARY PUBLIC

NOTARIAL SEAL
BERNADETTE K. KORB, Notary Public
City of Philadelphia, Phila. County
My Commission Expires January 30, 2007

9-2-04

**EXHIBIT D**



**LEAF**
**Financial**
**Corporation**

# GUARANTY

THIS GUARANTY, dated as of April 11, 2006 ("Guaranty"), is made by ATG Equipment Inc. an organization having its principal place of business at 1600 Arch Street, Philadelphia, PA 19103 ("Guarantor").

In order to induce **LEAF Funding, Inc.** ("LEAF") to enter into or extend certain financial accommodations from time to time with Alliance Environmental Technologies, Inc. ("Customer"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Customer. If more than one entity executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. Guaranty of Payment and Performance. Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer at any time owing to LEAF, whether direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Customer does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF.

Section 2. Representations, Warranties and Covenants.
2.1 Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a) Guarantor is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has full power and authority to enter into and perform its obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantor of this Guaranty have been duly authorized by all necessary action on the part of Guarantor, are not inconsistent with its organizational documents, do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which it is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on the ability of Guarantor to perform its obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

9-2-04

    2.2   Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF: (i) within 120 days after the close of each fiscal year of Guarantor occurring after the date hereof, an audited balance sheet of Guarantor at and as of the end of such fiscal year, together with an audited statement of income of Guarantor for such fiscal year, all prepared in accordance with generally accepted accounting principles consistently applied, and (ii) from time to time, such other information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

    Section 3.  Waiver of Precondition, Suretyship Defenses.  Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following:  any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Customer or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever.  Guarantor hereby covenants that by its agreement under this Guaranty it shall not be discharged from its obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge.  Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Customer, Guarantor or others; (ii) any change in the ownership of Customer; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument.  Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

    Section 4.   Relation with Customer, Release of Collateral.  LEAF may, without notice to Guarantor, deal with the Customer in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Customer such extensions of time to perform any act or acts as may seem advisable to LEAF· at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder.  No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

    Section 5.   Debt Subordination.  All debts and liabilities, present and future of the Customer to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Customer, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred.  This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request.  Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantor may receive and Customer may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Customer.  Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

    Section 6.   Waiver of Subrogation.  Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Customer, or any other person having any manner of liability for Customer's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

    Section 7.  Events of Default.  Each of the following events shall constitute an Event of Default under this Guaranty: (i)if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any· default relating to Guarantor or this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is ·a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Customer or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "Default"), then the Obligations

of Customer shall, at the sole option of LEAF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such Obligations), irrespective of whether a Default exists relating to Customer, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Customer, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law. If LEAF is required to return any payment made to LEAF by or on behalf of Customer, whether as a result of Customer's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

Section 8. Miscellaneous.

8.1 This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Customer to LEAF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

8.2 Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

8.3 This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantor and its successors and assigns. LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, the undersigned, pursuant to due corporate, limited liability company or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth above.

GUARANTOR: ATG Equipment Inc.

BY: _Ligita Solano_

PRINT NAME: L. Solano

TITLE: PRES.

GUARANTOR'S TAX ID#: 20 1928557

STATE OR COMMONWEALTH OF: _Pennsylvania_ :

COUNTY OF: _Philadelphia_ : : ss.

On this _18_ day of _April_ , 200 _6_ , before me, a notary public, the undersigned authorized representative, _____ (name) personally appeared and acknowledged himself/herself to be the _president_____ (title) of _ATG EQUIPMENT Inc._____ (organization name), a _____ (type of organization), and that he/she as such representative, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing in the name of the organization by himself/herself as such representative.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Tonya Davis_
NOTARY PUBLIC

Notarial Seal
Tonya Davis, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Oct. 22, 2006
Member, Pennsylvania Association Of Notaries

Page 4 of 4                                                                 9-2-04

**EXHIBIT E**



**LEAF**
**Financial**
**Corporation**          MASTER LOAN AND SECURITY AGREEMENT

THIS MASTER LOAN AND SECURITY AGREEMENT ("Agreement") is dated as of June 29, 2006, and is by and between LEAF Funding, Inc., with offices located at 110 S. Poplar Street, Suite 101, Wilmington, DE 19801 ("Lender") and Alliance Environmental Technologies, Inc. with offices located at 1600 Arch Street, Philadelphia, PA 19103 ("Borrower"). The parties hereto for good and valuable consideration and intending to be legally bound hereby agree as follows:

1. THE LOANS, COLLATERAL. Subject to the terms and conditions hereof, Lender agrees to advance to Borrower from time to time, term loans (each a "Term Loan" each in amount and on a closing date mutually acceptable to Lender and Borrower. The Borrower's obligation to repay each Term Loan shall be evidenced by a term note (each a "Term Note") in form and substance acceptable to Lender. Borrower shall repay each Term Loan according to the terms and conditions of the related Term Note. The terms and conditions set forth herein shall be deemed to form a part of each Term Note executed by the parties which references this Agreement and each Term Note shall be deemed to be a separate and distinct transaction. In the event of any conflict or inconsistency between the terms and conditions of this Agreement and a Term Note, the terms and conditions of the Term Note shall control and govern. Each Term Loan shall be conditioned upon the following: (i) no Event of Default having occurred and remaining uncured hereunder, and (ii) Lender's receipt of all documentation deemed necessary by Lender, including but not limited to this Agreement, the Term Note and any and all Uniform Commercial Code financing statements. To secure the prompt repayment of the Term Loan and of all other obligations and amounts due in connection with each Term Note (the "Payments"), whether now existing or hereafter arising, Borrower hereby grants to Lender a first priority security interest in all of Borrower's assets, including but not limited to, all inventory, supplies, accounts, general intangibles, chattel paper, instruments, goods, equipment, machinery, fixtures, furnishings, and all other personal property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, "Collateral").

2. TERM AND PAYMENT. This Agreement and each Term Note shall become effective upon Lender's acceptance and execution thereof at its corporate offices, as set forth above. The term of each Term Note shall commence on the date set forth therein and shall continue thereafter until all obligations of the Borrower under such Term Note shall have been fully performed. Borrower's obligation to make the Payments shall be absolute and unconditional and is not subject to any abatement, set-off, defense or counterclaim for any reason whatsoever. All Payments shall be made to Lender at its address specified above (or such other place as Lender may direct in writing) without notice or demand therefor. Until all amounts secured by all Term Notes hereunder shall have been paid in full, the security interest in the Collateral granted hereby shall remain in full force and effect. Whenever any Payment is not made by Borrower when due hereunder and such failure continues for ten (10) days thereafter, Borrower agrees to pay to Lender an amount equal to seven percent (7%) of such delayed Payment as compensation for Lender's internal operating expenses arising as a result of such delayed Payment, but only to the extent permitted by law. Such amount shall be payable in addition to all amounts payable by Borrower as a result of exercise of any of the remedies herein provided.

3. ASSIGNMENT. BORROWER MAY NOT ASSIGN THIS AGREEMENT OR THE RIGHTS AND/OR OBLIGATIONS HEREUNDER, NOR SHALL THE BORROWER LEASE OR LEND THE COLLATERAL OR SUBMIT IT TO BE USED BY ANYONE OTHER THAN BORROWER'S EMPLOYEES WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. Lender may at any time assign all or part of any interest in this Agreement, the Term Notes and moneys to become due to Lender thereunder and the Collateral. In such an event, all of Lender's rights, powers and privileges contained herein and in each Term Note so assigned shall inure to the benefit of and may be exercised by or on behalf of such assignee, but the assignee shall not be liable for or be required to perform any of Lender's obligations to

Borrower. The Lender may direct that all Payments due and to become due under a Term Note shall be paid directly to assignee upon notice of such assignment to Borrower. The right of the assignee to the payment of assigned Payments and performance of all Borrower's obligations under an assigned Term Note and the right to exercise any and all of Lender's rights thereunder shall not be subject to any defense, counterclaim or set-off which the Borrower may have or assert against the Lender, and the Borrower hereby agrees that it will not assert any such defenses, set-offs, counterclaims and claims against the assignee.

4. EVENTS OF DEFAULT. The term "Event of Default" shall mean any one or more of the following:

a. Borrower shall fail to make any Payment (or any other payment) as it becomes due under the related Term Note and such failure is not cured within 10 days; or

b. Borrower shall fail to perform or observe any of the covenants set forth in Paragraph 9; or

c. Borrower shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by it hereunder and such failure is not cured within 30 days after the earlier of (i) the date on which Borrower obtains knowledge of such failure or (ii) the date of notice thereof by Lender to Borrower; or

d. Borrower shall enter into any transaction of merger or consolidation in which it is not the surviving entity or sell, transfer or otherwise dispose of all or substantially all of its assets ("Assets") unless the surviving entity or the entity acquiring such Assets assumes all the duties and obligations of Borrower hereunder and which merger, consolidation, sale or transfer must be approved in writing by Lender; or

e. (i) Borrower or any guarantor of Borrower's obligations shall commence any action (A) for relief under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, or (B) seeking appointment of a receiver, custodian or other similar official for it or the Assets or making a general assignment for the benefit of its creditors; or (ii) there shall be commenced against Borrower any action (A) of a nature referred to in clause (i) which (I) results in the entry of an order for relief or any such other relief and (II) remains undismissed or undischarged for a period of 30 days, or (B) seeking attachment, execution or similar process against the Assets which results in the entry of an order for any such relief which shall not be vacated or discharged within 30 days from the entry thereof; or (iii) Borrower shall generally not, or be unable to, pay its debts as they come due; or

f. Borrower or any Guarantor shall die or (if an entity) liquidate or dissolve itself or be liquidated or terminated; or

g. Any representation or warranty made by Borrower herein or otherwise furnished Lender in connection with this Agreement or any Term Note shall prove at any time to have been untrue or misleading in any material respect; or

h. Borrower or any guarantor defaults with respect to any other indebtedness for borrowed money, lease, or installment sale obligation, or fails to comply with any financial covenant related thereto, in each case when any applicable grace period for such obligation has expired and the lender, lessor or creditor has commenced to exercise any remedy; or

i. Lender shall reasonably deem itself insecure as a result of a material adverse change in Borrower's financial condition or operations;

j. Borrower shall fail to maintain in good standing any license necessary to conduct its business.

5. REMEDIES. Upon the occurrence of any Event of Default, Lender may declare this Agreement and any Term Note hereunder to be in default and exercise any one or more of the following remedies: (a) declare the Termination Amount, as defined in Section 14 hereof, of each Term Note immediately due and payable without notice or demand, (b) charge Borrower interest on all moneys due Lender at the rate of eighteen percent

Blanket lien 10-8-04

(18%) per annum or the maximum rate permitted by law, whichever is less, from the date of default until paid in full, (c) charge Borrower a returned-check or nonsufficient funds charge ("NSF Charge") to reimburse Lender for the time and expense incurred with respect to a check that is returned for any reason including non-sufficient or uncollected funds, such NSF Charge is stipulated and liquidated at $45.00; (d) require Borrower to assemble all Collateral at Borrower's expense, at a place reasonably designated by Lender, (e) remove any physical obstructions for removal of the Collateral from the place where the Collateral is located and take possession of any or all items of Collateral, without demand or notice, wherever same may be located, disconnecting and separating all such Collateral from any other property, with or without any court order or pre-taking hearing or other process of law, it being understood that facility of repossession in the event of default is a basis for the financial accommodation reflected by this Agreement and all Term Notes hereunder.  Borrower hereby waives any and all damages occasioned by such retaking, except to the extent that such damage is caused by Lender's gross negligence or wilful misconduct.  Lender may, at its option, use, ship, store or repair all Collateral so removed and shall sell, lease or otherwise dispose of any such Collateral at a private or public sale.  In the event Lender disposes of the Collateral, Lender shall give Borrower credit for any sums received by Lender from the sale or lease of the Collateral after deduction of the expenses of sale or lease.  The credit for any sums received by Lender from such lease shall be made as and when received.  Borrower shall also be liable for and shall pay to Lender (i) all expenses incurred by Lender in connection with the enforcement of any of Lender's remedies, including all expenses of repossessing, storing, shipping, repairing and selling the Collateral, and (ii) Lender's reasonable attorney's fee's and expenses, whether such fees and expenses arise in connection with a bankruptcy proceeding of Lessee and/or any guarantor, or otherwise.  Lender and Borrower acknowledge the difficulty in establishing a measure for the damages incurred by Lender as a result of an Event of Default and owing to such difficulty agree that the provisions of this paragraph represent an agreed measure of damages and are not to be deemed a forfeiture or penalty.

All remedies of Lender hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately.  The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy.  No failure on the part of the Lender to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Agreement or any Term Note hereunder.  A waiver of default shall not be a waiver of any other or subsequent default.  Lender's recovery hereunder shall in no event exceed the maximum recovery permitted by law.

**6.  LAWS, REGULATIONS AND TAXES.**  Borrower shall comply with all laws, regulations and orders relating or pertaining to the Collateral, this Agreement or any Term Note hereunder and Borrower shall be responsible for, as and when due, and shall indemnify and hold Lender harmless from and against all present and future taxes and other governmental charges, or any increases therein (including, without limitation, sales, use, leasing and stamp taxes and license and registration fees) and amounts in lieu of such taxes and charges and any penalties or interest on any of the foregoing, imposed, levied upon, in connection with, or as a result of the purchase, ownership, delivery, financing, possession or use of the Collateral, or based upon or measured by the Payments or receipt with respect to this Agreement or any Term Note hereunder.  Borrower shall not, however, be obligated to pay any taxes on or measured by Lender's net income.  Borrower authorizes Lender to add to the amount of each Payment any sales, use or other tax that may be imposed on or measured by such Payment, plus reasonable costs incurred in collecting and administering any taxes, assessments or fees and remitting them to the appropriate authorities and interest thereon at the highest legal rate allowed, from the date due until fully paid.  In the event Borrower does not pay all sums specified above, Lender has the right, but not the obligation, to pay the same.  If Lender shall so pay any of the aforementioned, then the Borrower shall remit to Lender such amount with the next Payment plus Lender's reasonable costs incurred in collecting and administering any taxes, assessments or fees.  The obligations contained in this paragraph shall continue beyond the termination of this Agreement and all Term Notes hereunder if the obligations occurred during the term thereof.

**7.  UCC FILINGS AND FINANCIAL STATEMENTS.**  Borrower hereby irrevocably authorizes Lender and appoints Lender as Borrower's attorney-in-fact, with full power of substitution, to execute and/or file (on behalf of

Borrower if necessary) such financing statements, continuations, assignments, amendments and/or other documents which Lender deems reasonably necessary to protect and continue Lender's right, title and interest hereunder and with respect to the Collateral.  Lender and Borrower further agree that a carbon, photographic or other reproduction of this Agreement or any Term Note may be filed as a financing statement and shall be sufficient as a financing statement under the applicable law.  Borrower agrees to reimburse Lender for Lender's expenses incurred in preparing and filing all financing statements and for Lender's other documentation costs.  Borrower agrees to submit audited financial statements or tax returns if its financial statements are unaudited within 120 days from the end of its fiscal year and Borrower warrants to Lender that all financial statements furnished and to be furnished have been and will be prepared in accordance with generally accepted accounting principles, are an accurate reflection of Borrower's financial condition and that there has been no material adverse change in the financial condition of Borrower or any guarantor since the dates of preparation and submission of the financial statements submitted to Lender.  Borrower agrees to deliver to Lender at any time or times hereafter such information or documents, including, without limitation, certified resolutions, financial statements and legal opinions, as Lender may request.

**8.  LOSS OR DAMAGE.**  Borrower hereby assumes and shall bear the entire risk of loss (including theft and requisition of use) or destruction of or damage to the Collateral from any and every cause whatsoever, whether or not insured.  No such loss or damage shall relieve Borrower from any obligation under this Agreement or the Term Notes, which shall continue in full force and effect.  In the event of damage to or loss or destruction of the Collateral (or any item thereof), Borrower shall promptly notify Lender in writing of such fact and shall, at the option of Lender; (a) place the same in good repair, condition and working order, or (b) replace the Collateral with like collateral in good repair, condition and working order, acceptable to Lender and grant Lender a first priority security interest in such replacement collateral, whereupon such replacement collateral shall be deemed the Collateral for purposes hereof, or (c) pay to Lender the Termination Amount (or, at Lender's sole option, a prorata portion thereof if less than all of the Collateral is destroyed), whereupon the principal balance of the Term Note(s) shall be reduced accordingly.  All proceeds of insurance received by Lender as a result of such loss or damage shall, where applicable, be applied toward the replacement or repair of the Collateral or the payment of the obligations of Borrower hereunder.

**9.  INSURANCE.**  Until all amounts payable under the Term Notes have been paid in full, Borrower shall obtain, maintain and keep the Collateral insured against all risks of loss or damage from every cause whatsoever including, without limitation, loss by fire, theft, collision, earthquake, flood and such other risks of loss as are customarily insured against on the type of Collateral by businesses of the type in which Borrower is engaged, in an amount not less than the Termination Amount without deductible and without co-insurance.  Lender, its successors or assigns, shall be the named loss payee with respect to insurance for damage to or loss of the Collateral.  Borrower shall pay all premiums for such insurance and shall deliver to Lender the original policy or policies of insurance, certificates of insurance, or other evidence satisfactory to Lender evidencing the insurance required thereby, along with proof, satisfactory to Lender, of the payment of the premiums for such insurance policies.  All insurance shall provide for at least thirty (30) days advance written notice to Lender before any expiration, cancellation or material modification thereof.  The proceeds of all insurance policies required hereunder shall be paid directly to Lender.  Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact (which power shall be deemed coupled with an interest) to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy.  Unless Borrower is in default, Borrower may with the prior written approval of Lender, settle and adjust all such claims.  Borrower agrees if Borrower shall fail to procure, maintain, and pay for such insurance, Lender shall have the right, but not the obligation, to obtain such insurance on behalf of and at the expense of Borrower.  In the event Lender does obtain such insurance, Borrower agrees to pay all costs thereof with the next Payment or as specified by Lender.  As a condition of any Term Loan, Lender may require Borrower to obtain, provide evidence of and/or cause Lender to entitled to the benefits of liability insurance, professional liability insurance, disability insurance and/or key man life insurance.

**10.  BORROWER'S REPRESENTATIONS AND WARRANTIES.**  Borrower hereby represents, warrants and covenants to Lender the following with respect to each Term Note as of the date thereof: (a) Borrower is

Blanket lien 10-8-04

organized and validly existing under the laws of the state of its organization, with adequate power and capacity to enter into this Agreement, each Term Note, all documents related to the purchase of the Collateral and any other documents required to be delivered in connection with each Term Note or the Collateral (hereinafter "Documents") and Borrower is duly qualified and licensed to do business wherever necessary to carry on its present business, including all states where the Collateral is to be located; (b) the Documents have been duly authorized, executed and delivered by Borrower and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws; (c) no approval, consent or withholding of objections is required from any federal, state or local governmental authority or instrumentality with respect to the entry into or performance by Borrower of the Documents, except such as have already been obtained; (d) the entry into and performance by Borrower of the Documentation will not (i) violate any judgment, order, law or regulation applicable to Borrower or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any item of Collateral pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than the Term Note or any purchase money security interest retained by any supplier) to which Borrower is a party; (e) there are no suits or proceedings pending or threatened in court or before any regulatory commission, board or other administrative governmental agency against or affecting Borrower, which will have a material adverse effect on the ability of Borrower to fulfill its obligations under the Term Note; and (f) the balance sheet and statement of income of Borrower, or of any consolidated group of which Borrower is a member, heretofore delivered to Lender have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Borrower or the consolidated group of companies of which Borrower is a member on and as of the date thereof and the results of its or their operations for the period or periods covered thereby. Since the date of such balance sheet and statement of income there has been no material adverse change in the financial or operating condition of Borrower or of its consolidated group.

11.  MISCELLANEOUS. All obligations of the Borrower, if more than one, shall be joint and several. All paragraph headings are inserted for reference purposes only and shall not affect the interpretation or meaning of this Agreement or any Term Note hereunder. Borrower agrees to execute or obtain and deliver to Lender at Lender's request such additional documents as Lender may reasonably deem necessary to protect Lender's interest in the Collateral, this Agreement and any Term Note.

12.  NOTICE. Written notices to be given hereunder shall be deemed to have been given when delivered personally or deposited in the United States mails, postage prepaid, addressed to such party at its address set forth above or at such other address as such party may have subsequently provided in writing.

13.  CHOICE OF LAW. This Agreement and each Term Note hereunder shall be binding and effective when accepted by Lender, shall be deemed to have been made in Delaware and, except for local filing requirements, shall be governed by and construed in accordance with the laws (except for the laws relating to conflict of law) of the State of Delaware. Borrower hereby consents to and agrees that personal jurisdiction over Borrower and subject matter jurisdiction over the Collateral shall be with the courts of the State of Delaware or the Federal District Court for the District of Delaware, solely at Lender's option, with respect to any provision of this Agreement and/or any Term Note. Lessee agrees that service of process in any action or proceeding may be duly effected upon Borrower by mailing such process via certified mail, return receipt requested.

14.  PREPAYMENT. Borrower may not elect to prepay any portion of a Term Note without the prior written consent of Lender. In the event of a prepayment of a Term Note as provided in Section 5 or 8 hereof, Borrower shall pay to Lender a sum equal to: (a) all amounts accrued but unpaid, including all installments of principal and interest, all late fees and all other amounts due as of the date of prepayment; plus (b) the remaining installments of principal and interest under the Term Note, discounted to the date of prepayment at 4% per annum (the "Termination Amount").

15.  INTEREST LIMITATION. Notwithstanding any other provision in this Agreement or any Term Note, nothing herein shall authorize or permit the exaction or payment of interest by Borrower where the same would be prohibited by any applicable law or would violate the applicable usury law. In

any such event, this Agreement shall automatically be deemed amended to permit interest charges at an amount equal to, but not greater than, the maximum permitted by law.

16.  INDEMNITY. Borrower agrees to indemnify and hold harmless Lender, and its agents, employees and assigns, on a net after-tax basis, (and, if requested by Lender, defend) from and against any liability, damage or loss of any nature (including fines, forfeitures, penalties, settlements and attorneys' fees at trial and on appeal) arising out of, connected with, or resulting from this Agreement, and claims of any nature arising out of the selection, purchase, delivery, acceptance, rejection, use, operation, ownership, return or disposition of the Collateral whether in contract or tort. In the event this Agreement is assigned by Lender to a third party, Borrower agrees that the above indemnity shall apply to such assignee and shall also, with respect to such assignee, extend such indemnification to any claims arising out of the manufacture of the Collateral, any defects in the Collateral, maintenance and repair of the Collateral or any trademark, patent or copyright infringement.

17.  ENTIRE AGREEMENT; NON-WAIVER; SEVERABILITY. This Agreement and each Term Note contains the entire agreement and understanding between Borrower and Lender or relating to the subject matter hereof. No agreements or understandings shall be binding on the parties hereto unless set forth in writing and signed by the parties. Time is of the essence in this Agreement and each Term Note. No waiver by Lender of any breach or default shall constitute a waiver of any additional or subsequent breach or default by Borrower nor shall it be a waiver of any of Lender's rights. Any provision of this Agreement or any Term Note which for any reason may be held unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability without invalidating the remaining provisions of this Agreement or any Term Note, and any such unenforceability in any jurisdiction shall not render unenforceable such provision in any other jurisdiction.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives as of the date first above written.

BORROWER: Alliance Environmental Technologies, Inc.

BY: _____

PRINT NAME: James Solano

TITLE: CEO

LEAF FUNDING, INC.

BY: _____

PRINT NAME: _____

TITLE: _____

Blanket lien 10-8-04

 **LEAF Financial Corporation**

SCHEDULE A TO
TERM NOTE, DATED June 29, 2006
BY Alliance Environmental Technologies, Inc.
("BORROWER")
IN FAVOR OF LEAF FUNDING, INC.
COLLATERAL DESCRIPTION:

Collateral Location:

ATG Equipment, Inc.
55 Fulkerson Drive
Waterbury, CT 06708

BORROWER: Alliance Environmental Technologies, Inc.

BY: _____

PRINT NAME: _James Solano_

TITLE: _C E O._

DATE: _6-29-06_

Page 5 of 7

Blanket lien 10-8-04

**EXHIBIT F**



**LEAF**
Financial
Corporation

**PERSONAL GUARANTY**

THIS PERSONAL GUARANTY, dated as of June 29, 2006 ("Guaranty"), is made by the undersigned individual(s), each having the Social Security Number and personal residence set forth under such signature (each a "Guarantor"). In order to induce LEAF Funding, Inc. ("LEAF") to enter into or extend certain financial accommodations from time to time with Alliance EnvironmentalTechnologies, Inc. ("Borrower"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Borrower. If more than one person executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. Guaranty of Payment and Performance. Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Borrower at any time owing to LEAF, whether direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Borrower does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Borrower fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF.

Section 2. Representations, Warranties and Covenants.
2.1 Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a) Guarantor is not a minor and has full power and authority to enter into and perform his or her obligations under this Guaranty.
(b) The execution, delivery, and performance by Guarantor of this Guaranty do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which he or she is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.
(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on the ability of Guarantor to perform his or her obligations under this Guaranty.
(d) The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantor.
(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2 Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF such information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

**Section 3. Waiver of Precondition, Suretyship Defenses.** Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Borrower or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever. Guarantor hereby covenants that by his or her agreement under this Guaranty he or she shall not be discharged from his or her obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Borrower, Guarantor or others; (ii) any change in the ownership of Borrower; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument. Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

**Section 4. Relation with Borrower, Release of Collateral.** LEAF may, without notice to Guarantor, deal with the Borrower in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Borrower such extensions of time to perform any act or acts as may seem advisable to LEAF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder. No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

**Section 5. Debt Subordination.** All debts and liabilities, present and future of the Borrower to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Borrower, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred. This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request. Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantor may receive and Borrower may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal or interest or other scheduled installment payments of Subordinated Debt from Borrower. Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

**Section 6. Waiver of Subrogation.** Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Borrower, or any other person having any manner of liability for Borrower's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

**Section 7. Events of Default.** Each of the following events shall constitute an Event of Default under this Guaranty: (i) if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor or this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Borrower or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "Default"), then the Obligations of Borrower shall, at the sole option of LEAF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts

with respect to such Obligations), irrespective of whether a Default exists relating to Borrower, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Borrower, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law. If LEAF is required to return any payment made to LEAF by or on behalf of Borrower, whether as a result of Borrower's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

<u>Section 8. Miscellaneous.</u>
8.1 This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Borrower to LEAF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

8.2 Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

8.3 This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantor and its successors and assigns. LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be duly executed and delivered as of the date set forth above.

| GUARANTOR: James Solano | GUARANTOR: Legita Solano |
|---|---|
| SIGNATURE: X _James_ | SIGNATURE: X _Ligita Solano_ |
| PRINT NAME: X _James Solano_ | PRINT NAME: X _L.C. to Solano_ |
| HOME ADDRESS: X _421 No. Longbeach Rd._ _Rockville Ct. NY 11570_ | HOME ADDRESS: X _421 No Longbeach Rd_ _Rockville Ctr, N.Y. 11570_ |
| SOCIAL SECURITY #:X _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_ | SOCIAL SECURITY #:X _049.52.2366_ |

STATE OR COMMONWEALTH OF: _NewYork_ :

COUNTY OF: _Bronx_ : ss.

On this _30_ day of _June_ , 200 _6_ , before me, a notary public, the undersigned _____ (name), as an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she as an individual, executed the foregoing Personal Guaranty for the purposes therein contained by signing his or her name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Laura Ortiz_
NOTARY PUBLIC

LAURA ORTIZ
Notary Public, State of New York
No. 01OR5052644
Qualified in Queens County
Commission Expires Nov. 27, 2009

STATE OR COMMONWEALTH OF: _NewYork_ :

COUNTY OF: _Bronx_ : ss.

On this _30_ day of _June_ , 200 _6_ , before me, a notary public, the undersigned _____ (name), as an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she as an individual, executed the foregoing Personal Guaranty for the purposes therein contained by signing his or her name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Laura Ortiz_
NOTARY PUBLIC

LAURA ORTIZ
Notary Public, State of New York
No. 01OR5052644
Qualified in Queens County
Commission Expires Nov. 27, 2009

9-21-04

**EXHIBIT G**



**LEAF**
Financial
Corporation

CORPORATE
GUARANTY

THIS GUARANTY, dated as of June 29, 2006 ("Guaranty"), is made by ATG Equipment, Inc. an organization having its principal place of business at 1866 Berlin Turnpike, Wehersfield, CT 06109 ("Guarantor").

In order to induce LEAF Funding, Inc. ("LEAF") to enter into or extend certain financial accommodations from time to time with Alliance Environmental Technologies, Inc. ("Borrower"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Borrower. If more than one entity executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. Guaranty of Payment and Performance. Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Borrower at any time owing to LEAF, whether direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Borrower does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Borrower fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF.

Section 2. Representations, Warranties and Covenants.
2.1 Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a) Guarantor is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has full power and authority to enter into and perform its obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantor of this Guaranty have been duly authorized by all necessary action on the part of Guarantor, are not inconsistent with its organizational documents, do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which it is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on the ability of Guarantor to perform its obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2  Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF: (i) within 120 days after the close of each fiscal year of Guarantor occurring after the date hereof, an audited balance sheet of Guarantor at and as of the end of such fiscal year, together with an audited statement of income of Guarantor for such fiscal year, all prepared in accordance with generally accepted accounting principles consistently applied, and (ii) from time to time, such other information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

Section 3.  Waiver of Precondition, Suretyship Defenses.  Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following:  any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Borrower or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever.  Guarantor hereby covenants that by its agreement under this Guaranty it shall not be discharged from its obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Borrower, Guarantor or others; (ii) any change in the ownership of Borrower; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument.  Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

Section 4.  Relation with Borrower, Release of Collateral.  LEAF may, without notice to Guarantor, deal with the Borrower in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Borrower such extensions of time to perform any act or acts as may seem advisable to LEAF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder. No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

Section 5.  Debt Subordination.  All debts and liabilities, present and future of the Borrower to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Borrower, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred.  This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request. Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantor may receive and Borrower may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Borrower.  Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

Section 6.  Waiver of Subrogation.  Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Borrower, or any other person having any manner of liability for Borrower's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

Section 7.  Events of Default.  Each of the following events shall constitute an Event of Default under this Guaranty: (i)if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor or this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Borrower or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "Default"), then the Obligations

of Borrower shall, at the sole option of LEAF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such Obligations), irrespective of whether a Default exists relating to Borrower, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Borrower, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law. If LEAF is required to return any payment made to LEAF by or on behalf of Borrower, whether as a result of Borrower's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

Section 8. Miscellaneous.

8.1  This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Borrower to LEAF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

8.2  Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

8.3  This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantor and its successors and assigns. LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, the undersigned, pursuant to due corporate, limited liability company or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth above.

*GUARANTOR: ATG Equipment, Inc.*

BY: x _Ligita Solano_

PRINT NAME: x _Ligita Solano_

TITLE: x _President - Director_

GUARANTOR'S TAX ID#:x _201928557_

STATE OR COMMONWEALTH OF: _New York_ : ss.

COUNTY OF: _Bronx_ :

On this _30_ day of _June_ , 200 _6_ , before me, a notary public, the undersigned authorized representative, _J Svioni_ (name) personally appeared and, acknowledged himself/herself to be the _CEO_ (title) of _Alliance Revidenmital Tesh 2_ (organization name), a _____ (type of organization), and that he/she as such representative, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing in the name of the organization by himself/herself as such representative.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Laura [signature]_
NOTARY PUBLIC

LAURA ORTIZ
Notary Public, State of New York
No. 01OR5052644
Qualified in Queens County
Commission Expires Nov. 27, 2009

Page 4 of 4                                                    9-2-04

**EXHIBIT H**



**LEAF**
Financial
Corporation

**CORPORATE
GUARANTY**

THIS GUARANTY, dated as of June 29, 2006 ("Guaranty"), is made by Alliance Technology Group, Inc., an organization having its principal place of business at 421 North Longbeach Road, Rockville, NY 11570 ("Guarantor").

In order to induce LEAF Funding, Inc. ("LEAF") to enter into or extend certain financial accommodations from time to time with          ("Borrower"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Borrower. If more than one entity executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. <u>Guaranty of Payment and Performance.</u>  Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Borrower at any time owing to LEAF, whether direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations").  This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Borrower does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Borrower fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF.  Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof.  This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise.  The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF.

Section 2. <u>Representations, Warranties and Covenants.</u>
2.1  Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a)  Guarantor is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has full power and authority to enter into and perform its obligations under this Guaranty.

(b)  The execution, delivery, and performance by Guarantor of this Guaranty have been duly authorized by all necessary action on the part of Guarantor, are not inconsistent with its organizational documents, do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which it is bound.  This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c)  There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on the ability of Guarantor to perform its obligations under this Guaranty.

(d)  The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby.  Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e)  As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities.  The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2  Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF: (i) within 120 days after the close of each fiscal year of Guarantor occurring after the date hereof, an audited balance sheet of Guarantor at and as of the end of such fiscal year, together with an audited statement of income of Guarantor for such fiscal year, all prepared in accordance with generally accepted accounting principles consistently applied, and (ii) from time to time, such other information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

Section 3.  Waiver of Precondition, Suretyship Defenses.  Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Borrower or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever.  Guarantor hereby covenants that by its agreement under this Guaranty it shall not be discharged from its obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge.  Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Borrower, Guarantor or others; (ii) any change in the ownership of Borrower; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument.  Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

Section 4.  Relation with Borrower, Release of Collateral.  LEAF may, without notice to Guarantor, deal with the Borrower in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Borrower such extensions of time to perform any act or acts as may seem advisable to LEAF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder.  No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

Section 5.  Debt Subordination.  All debts and liabilities, present and future of the Borrower to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Borrower, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred.  This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request.  Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantor may receive and Borrower may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Borrower.  Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

Section 6.  Waiver of Subrogation.  Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Borrower, or any other person having any manner of liability for Borrower's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

Section 7.  Events of Default.  Each of the following events shall constitute an Event of Default under this Guaranty: (i) if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor or this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Borrower or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "**Default**"), then the Obligations

of Borrower shall, at the sole option of LEAF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such Obligations), irrespective of whether a Default exists relating to Borrower, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Borrower, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law. If LEAF is required to return any payment made to LEAF by or on behalf of Borrower, whether as a result of Borrower's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

### Section 8. Miscellaneous.

8.1  This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Borrower to LEAF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

8.2  Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

8.3  This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantor and its successors and assigns. LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, the undersigned, pursuant to due corporate, limited liability company or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth above.

GUARANTOR: ALLIANCE TECHNOLOGY GROUP, INC.

BY: x

PRINT NAME: x  James Solano

TITLE: x  Pres.

GUARANTOR'S TAX ID#: x  52 2274134

9-2-04

STATE OR COMMONWEALTH OF: _New York_    :

: ss.

COUNTY OF: _Bronx_    :

On this _30_ day of _June_, 200_6_, before me, a notary public, the undersigned authorized representative, _____ _Soloman_ (name) personally appeared and acknowledged himself/herself to be the _CEO_ (title) of _Atlantic Railways of Italy_ (organization name), a _____ (type of organization), and that he/she as such representative, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing in the name of the organization by himself/herself as such representative.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Laura Ortiz_
NOTARY PUBLIC

LAURA ORTIZ
Notary Public, State of New York
No. 01OR5052644
Qualified in Queens County
Commission Expires Nov. 27, 2009

Page 4 of 4    9-2-04

**EXHIBIT I**

# COLLATERALIZED GUARANTY

THIS COLLATERALIZED GUARANTY, dated as of June 29, 2006 ("Guaranty"), is made by Alliance Technology Group, Inc., an organization having its principal place of business at 421 North Longbeach Road, Rockville, NY 11670 ("Guarantor").

In order to induce LEAF Funding, Inc. ("LEAF") from time to time to enter into or extend certain financial accommodations with, or forbear from exercising rights and remedies against, Alliance Environmental Technologies, Inc. ("Customer"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Customer—If more than one entity executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

**Section 1. Guaranty of Payment and Performance.** Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer at any time owing to LEAF, whether now existing or hereafter arising, direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Customer does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF

**Section 2. Representations, Warranties and Covenants.**

2.1 Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a) Guarantor is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has full power and authority to enter into and perform its obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantor of this Guaranty have been duly authorized by all necessary action on the part of Guarantor, are not inconsistent with the organizational documents, do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which it is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on the ability of Guarantor to perform its obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such

balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2 Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF: (i) within 120 days after the close of each fiscal year of Guarantor occurring after the date hereof, an audited balance sheet of Guarantor at and as of the end of such fiscal year, together with an audited statement of income of Guarantor for such fiscal year, all prepared in accordance with generally accepted accounting principles consistently applied, and (ii) from time to time, such other information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

**Section 3. Waiver of Precondition, Suretyship Defenses** Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Customer or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever. Guarantor hereby covenants that by its agreement under this Guaranty it shall not be discharged from its obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Customer, Guarantor or others; (ii) any change in the ownership of Customer; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument. Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

**Section 4. Relation with Customer, Release of Collateral.** LEAF may, without notice to Guarantor, deal with the Customer in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Customer such extensions of time to perform any act or acts as may seem advisable to LEAF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder. No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

**Section 5. Debt Subordination.** All debts and liabilities, present and future of the Customer to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Customer, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred. This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request. Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the

Blanket

5-9-04

JUL-05-2004 00:01 From:ALLIANCE ATG

Subordinated Debt, Guarantor may receive and Customer may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Customer. Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

Section 6. Waiver of Subrogation. Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Customer, or any other person having any manner of liability for Customer's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

Section 7. Collateral. As security for the performance when due of Guarantor's obligations hereunder, whether now existing or hereafter arising, Guarantor hereby grants LEAF a first priority security interest in and mortgage upon all of Guarantor's assets, including but not limited to, all inventory, supplies, accounts, accounts receivables, health-care-insurance receivables, general intangibles, insurance policies, chattel paper, instruments, goods, equipment, machinery, fixtures, furnishings, and all other personal and real property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, "Collateral"). Guarantor covenants to keep the Collateral free and clear of all liens and encumbrances, except for LEAF's security interest therein. Guarantor hereby irrevocably authorizes LEAF and appoints LEAF as its attorney-in-fact, with full power of substitution, to execute and/or file such financing statements, continuations, assignments, amendments and/or other documents which LEAF deems reasonably necessary to protect and continue LEAF's right, title and interest hereunder and with respect to the Collateral. Guarantor agrees to reimburse LEAF for LEAF's expenses incurred in preparing and filing all financing statements and for LEAF's other documentation costs. So long as this Guaranty shall remain in effect, Guarantor, at its own expense, shall obtain and maintain insurance coverage for the Collateral with respect to (i) all risks of loss or damage from every cause whatsoever, and (ii) general liability, each in an amount acceptable to LEAF, without deductible and without co-insurance. Such insurance policy(ies) shall be in a form and amount and with such companies as may be reasonably satisfactory to LEAF. LEAF, its successors and assigns shall be the sole named loss payee with respect to insurance for loss or damage to the Collateral. The proceeds of all such insurance policy(ies) shall be paid directly to LEAF. Guarantor hereby irrevocably appoints LEAF as Guarantor's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under such insurance policy(ies). Guarantor agrees that if Guarantor shall fail to procure, maintain and pay for such insurance, LEAF shall have the right, but not the obligation, to obtain such insurance on behalf of and at the expense of Guarantor. In the event LEAF does obtain such insurance, Guarantor agrees to pay all costs thereof upon demand by LEAF.

Section 8. Events of Default. Each of the following events shall constitute an Event of Default under this Guaranty: (i) if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor of this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any covenant, representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Customer or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "Default"), then the Obligations of Customer shall, at the sole option of LEAF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such

Obligations), irrespective of whether a Default exists relating to Customer, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Customer, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law. If LEAF is required to return any payment made to LEAF by or on behalf of Customer, whether as a result of Customer's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise cancelled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

Section 9. Miscellaneous.
9.1 This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Customer to LEAF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

9.2 Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

9.3 This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law. This Guaranty shall be binding upon Guarantor and its successors and assigns. LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, the undersigned, pursuant to due corporate, limited liability company or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth above.

GUARANTOR: Alliance Technology Group, Inc.
SIGNATURE: X _____
PRINT NAME: James Bolano?
TITLE: President

STATE OR COMMONWEALTH OF _____
COUNTY _____                                          OF _____

On this _____ day of _____, 200__, before me, a notary public, _____ (insert name of person signing guaranty), as an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she as an authorized representative of Guarantor, executed the foregoing Collateralized Guaranty for the purposes therein contained by signing his or her name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
NOTARY PUBLIC

JUL-05-2004 00:02 From: ALLIANCE ATG

**EXHIBIT J**

## COLLATERALIZED GUARANTY

THIS COLLATERALIZED GUARANTY, dated as of June 29, 2006 ("Guaranty"), is made by ATG Equipment, Inc. an organization having its principal place of business at 1866 Berlin Turnpike, Wethersfield, CT 06109 ("Guarantor").

In order to induce LEAF Funding, Inc. ("LEAF") from time to time to enter into or extend certain financial accommodations with, or forbear from exercising rights and remedies against, Alliance Environmental Technologies, Inc. ("Customer"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Customer. If more than one entity executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. Guaranty of Payment and Performance. Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer at any time owing to LEAF, whether now existing or hereafter arising, direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Customer does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF.

Section 2 Representations, Warranties and Covenants.

2.1 Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a) Guarantor is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has full power and authority to enter into and perform its obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantor of this Guaranty have been duly authorized by all necessary action on the part of Guarantor, are not inconsistent with the organizational documents, do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which it is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if adversely determined, will have a material adverse effect on the ability of Guarantor to perform its obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such

balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2 Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF: (i) within 120 days after the close of each fiscal year of Guarantor occurring after the date hereof, an audited balance sheet of Guarantor at and as of the end of such fiscal year, together with an audited statement of income of Guarantor for such fiscal year, all prepared in accordance with generally accepted accounting principles consistently applied, and (ii) from time to time, such other information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

Section 3. Waiver of Precondition, Suretyship Defenses. Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Customer or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever. Guarantor hereby covenants that by its agreement under this Guaranty it shall not be discharged from its obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Customer, Guarantor or others; (ii) any change in the ownership of Customer; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument. Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

Section 4. Relation with Customer, Release of Collateral. LEAF may, without notice to Guarantor, deal with the Customer in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Customer such extensions of time to perform any act or acts as may seem advisable to LEAF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder. No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

Section 5. Debt Subordination. All debts and liabilities, present and future of the Customer to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Customer, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred. This Guaranty shall constitute an assignment of the Subordinated Debt. In the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request, Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the

Subordinated Debt, Guarantor may receive and Customer may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Customer. Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

Section 6. Waiver of Subrogation. Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Customer, or any other person having any manner of liability for Customer's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

Section 7. Collateral. As security for the performance when due of Guarantor's obligations hereunder, whether now existing or hereafter arising, Guarantor hereby grants LEAF a first priority security interest in and mortgage upon all of Guarantor's assets, including but not limited to, all inventory, supplies, accounts, accounts receivables, health-care-insurance receivables, general intangibles, insurance policies, chattel paper, instruments, goods, equipment, machinery, fixtures, furnishings, and all other personal and real property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, "Collateral"). Guarantor covenants to keep the Collateral free and clear of all liens and encumbrances, except for LEAF's security interest therein. Guarantor hereby irrevocably authorizes LEAF and appoints LEAF as it's attorney-in-fact, with full power of substitution, to execute and/or file such financing statements, continuations, assignments, amendments and/or other documents which LEAF deems reasonably necessary to protect and continue LEAF's right, title and interest hereunder and with respect to the Collateral. Guarantor agrees to reimburse LEAF for LEAF's expenses incurred in preparing and filing all financing statements and for LEAF's other documentation costs. So long as this Guaranty shall remain in effect, Guarantor, at its own expense, shall obtain and maintain insurance coverage for the Collateral with respect to: (i) all risks of loss or damage from every cause whatsoever and, (ii) general liability, each in an amount acceptable to LEAF, without deductible and without co-insurance. Such insurance policy(ies) shall be in a form and amount and with such companies as may be reasonably satisfactory to LEAF. LEAF, its successors and assigns shall be the sole named loss payee with respect to insurance for loss or damage to the Collateral. The proceeds of all such insurance policy(ies) shall be paid directly to LEAF. Guarantor hereby irrevocably appoints LEAF as Guarantor's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under such insurance policy(ies). Guarantor agrees that if Guarantor shall fail to procure, maintain and pay for such insurance, LEAF shall have the right, but not the obligation, to obtain such insurance on behalf of and at the expense of Guarantor. In the event LEAF does obtain such insurance, Guarantor agrees to pay all costs thereof upon demand by LEAF.

Section 8. Events of Default. Each of the following events shall constitute an Event of Default under this Guaranty: (i)if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor of this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any covenant, representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding effecting the status, existence, assets or obligations of Customer or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "Default"), then the Obligations of Customer shall, at the sole option of LEAF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such

Obligations), irrespective of whether a Default exists relating to Customer, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Customer, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law. If LEAF is required to return any payment made to LEAF by or on behalf of Customer, whether as a result of Customer's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

Section 9. Miscellaneous
9.1 This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Customer to LEAF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

9.2 Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

9.3 This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantor and its successors and assigns. LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, the undersigned, pursuant to due corporate, limited liability company or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth above.

GUARANTOR: ATG Equipment, Inc.
SIGNATURE: X Lloita Solano
PRINT NAME: Lloita Solano
TITLE: President

STATE OR COMMONWEALTH OF _____
COUNTY _____ OF:

On this _____ day of _____, 200___, before me, a notary public, _____ (insert name of person signing guaranty), as an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she is an authorized representative of Guarantor, executed the foregoing Collateralized Guaranty for the purposes therein contained by signing his or her name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
NOTARY PUBLIC

JUL-05-2004 00:03 From:ALLIANCE ATG

**EXHIBIT K**

Restructure of Lease Agreement

**Reference:**
**Lessee: Alliance Environmental Technologies, Inc.; Loan No. 001-1040954-001, Dated: June 29, 2006**

This Restructure of Loan Agreement ("Restructure Agreement") is effective as of November 27, 2006 and amends and modifies that certain Lease Agreement, Master Loan Agreement, Promissory Note, Equipment Finance Agreement, Security Agreement, or Chattel Mortgage referenced above ("Lease") between LEAF Funding, Inc. ("LEAF") and Alliance Environmental Technologies, Inc. ("Lessee"). Capitalized terms used but not defined will have the meaning given to them in the Lease. If there is any conflict between the terms of this Restructure Agreement and the terms of the Lease, the terms of this Restructure Agreement will control and prevail.

1.  Lessee hereby acknowledges that Lessee's obligations to LEAF under the Lease are non-cancelable, absolute, unconditional and not subject to abatement, reduction, set-off or defense of any kind. This Restructure Agreement does not reduce or otherwise affect any rights or remedies Lessee may have against any vendor of the Equipment.

2.  Lessee is currently not in compliance with the terms of the Lease and LEAF is entitled to exercise any and all rights and remedies under the Lease and/or at law. Notwithstanding the foregoing, in consideration of, and in reliance upon, Lessee's agreement with the terms of this Restructure Agreement, and the payment by Lessee of $0.00 as a restructuring fee, LEAF is willing to forebear in the exercise of its rights and remedies, but does not waive any such rights and remedies. Any breach of the terms of this Restructure Agreement or the terms of the Lease shall constitute a default under the Lease and LEAF reserves its right to require strict compliance with the terms hereof and thereof.

3.  Lessee and LEAF hereby agree (and any Guarantor executing this Restructure Agreement consents) to modify the Lease as follows: as of the date hereof, there shall be Six (6) remaining monthly lease payments, One (1) in the amount of $0.00, Four (4) each in the amount of $25,000.00 and One (1) in the amount of 58,423.36; the first remaining monthly lease payment shall be due on or before November 30, 2006, with subsequent monthly lease payments being due on or before the same day of each subsequent month until paid in full and Lessee has otherwise complied with all of its obligations under the Lease.

4.  To secure the prompt repayment of the Lease and of all other obligations and amounts due in connection with the Lease (the "Payments") and all other obligations of Lessee to LEAF, whether now existing or hereafter arising (collectively, the "Indebtedness"), Lessee (and each Guarantor executing this Restructure Agreement) hereby grants to LEAF a first priority security interest in all of Lessee's (and Guarantor's) assets, including but not limited to, all inventory, supplies, accounts, accounts receivables, health-care-insurance receivables, general intangibles, life insurance policies, chattel paper, instruments, goods, equipment, machinery, fixtures, furnishings, and all other personal and real property together with all other accessories, accessions, attachments thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, "Collateral"). Lessee (and each Guarantor) covenants to keep the Collateral free and clear of all liens and encumbrances, except for LEAF's security interest therein. Lessee (and each Guarantor) hereby irrevocably authorizes LEAF and appoints LEAF as it's attorney-in-fact, with full power of substitution, to execute and/or file (on behalf of Lessee or Guarantor if necessary) such financing statements, continuations, assignments, amendments and/or other documents which LEAF deems reasonably necessary to protect and continue LEAF's right, title and interest hereunder and with respect to the Collateral. Lessee (and each Guarantor) agrees to reimburse LEAF for LEAF's expenses incurred in preparing and filing all financing statements and for LEAF's other documentation costs.

5.  The Lessee covenants and agrees that the terms of this Restructure Agreement are CONFIDENTIAL and shall not be disclosed to any third party. Lessee may disclose this Restructure Agreement and its terms in any legal proceeding to enforce this Agreement and as required by law, regulation, or order issued in a judicial or administrative proceeding. Notwithstanding the foregoing, if Lessee is requested to disclose this Agreement or its terms in a judicial or administrative proceeding, Lessee must, before production, promptly notify LEAF in writing so LEAF may have a reasonable opportunity to intervene and object to the disclosure of this Agreement and its terms, and/or to seek a protective order or other confidential treatment of the Agreement and its terms.

6.  This Restructure Agreement supplements and amends the Lease only to the extent and in the manner set forth, and in all other respects, the Lease will remain in full force and effect. This Restructure Agreement shall be binding upon and be for the benefit of the parties hereto and their permitted successors and assigns. A facsimile or e-mail version of this Restructure Agreement containing the signature of a party shall be deemed binding upon such party and this Restructure Agreement may be executed in any number of counterparts, which when taken as a whole, shall be binding upon each party executing any such counterpart.

IN WITNESS WHEREOF, the parties have caused this Restructure Agreement to be executed by their duly authorized representative as of the date set forth above.

| LESSEE: Alliance Environmental Technologies, Inc. | LEAF FUNDING, INC. |
|---|---|
| By: _____ | By: _Legita Solano_ |
| Print Name: _____ | Print Name: _L Solano_ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |
| GUARANTOR: James Solano | GUARANTOR: Legita Solano |
| By: _____ | By: _Legita Solano_ |
| Print Name: _____ | Print Name: _L Solano_ |
| SSN: _____ | SSN: _____ |
| Date: _____ | Date: _____ |

**LEAF**
FINANCIAL
CORPORATION

SCHEDULE A TO
**Restructure of Lease Agreement,**
**Dated November 27, 2006**
**BY Alliance Environmental Technologies, Inc.**
**("Lessee")**
**IN FAVOR OF LEAF FUNDING, INC.**
**COLLATERAL DESCRIPTION:**

ATG Containers S/N#:

AWIN 6603
AWIN 6512
AWIN 6989
AWIN 6053
AWIN 6697
AWIN 6170
AWIN 6852
AWIN 6826
AWIN 7245
AWIN 6895
AWIN 6616
AWIN 6617

Collateral Location:

ATG Equipment, Inc
55 Fulkerson Drive
Waterbury, CT  06708

BORROWER: Alliance Environmental Technologies, Inc.

BY: _____

PRINT NAME: _____

TITLE: _____

DATE: _11/30/06_____

witness to signature

LAURA ORTIZ
Notary Public, State of New York
No. 01OR5052544
Qualified in Queens County
Commission Expires Nov. 27, 2009

Page 2 of 2

**EXHIBIT L**

**LEAF**
FINANCIAL
CORPORATION

# CORPORATE GUARANTY

THIS GUARANTY, dated as of November 27, 2006 ("Guaranty"), is made by Alliance Technology Group, Inc, an organization having its principal place of business at 421 North Longbeach Road, Rockville, NY 11570 ("Guarantor").

In order to induce LEAF Funding, Inc. ("LEAF") from time to time to enter into or extend certain financial accommodations from time to time with, or forebear from exercising rights and remedies against, Alliance Environmental Technologies, Inc.("Customer"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Customer. If more than one entity executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

Section 1. Guaranty of Payment and Performance. Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer at any time owing to LEAF, whether direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Customer does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF.

Section 2. Representations, Warranties and Covenants.
2.1 Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a) Guarantor is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has full power and authority to enter into and perform its obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantor of this Guaranty have been duly authorized by all necessary action on the part of Guarantor, are not inconsistent with its organizational documents, do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which it is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if

adversely determined, will have a material adverse effect on the ability of Guarantor to perform its obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2 Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF: (i) within 120 days after the close of each fiscal year of Guarantor occurring after the date hereof, an audited balance sheet of Guarantor at and as of the end of such fiscal year, together with an audited statement of income of Guarantor for such fiscal year, all prepared in accordance with generally accepted accounting principles consistently applied, and (ii) from time to time, such other information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

Section 3. Waiver of Precondition, Suretyship Defenses. Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Customer or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever. Guarantor hereby covenants that by its agreement under this Guaranty it shall not be discharged from its obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Customer, Guarantor or others; (ii) any change in the ownership of Customer; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument. Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

Section 4. Relation with Customer, Release of Collateral. LEAF may, without notice to Guarantor, deal with the Customer in the same manner and as freely as if this Guaranty did not exist and Customer shall be entitled among other things, without loss of right hereunder, to grant Customer such extensions of time to perform any act or acts as may seem advisable to LEAF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder. No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

Section 5. Debt Subordination. All debts and liabilities, present and future of the Customer to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid

over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Customer, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred. This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request. Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantor may receive and Customer may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Customer. Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

Section 6. Waiver of Subrogation. Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Customer, or any other person having any manner of liability for Customer's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

Section 7. Events of Default. Each of the following events shall constitute an Event of Default under this Guaranty: (i)if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor or this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Customer or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "Default"), then the Obligations of Customer shall, at the sole option of LEAF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such Obligations), irrespective of whether a Default exists relating to Customer, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Customer, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law. If LEAF is required to return any payment made to LEAF by or on behalf of Customer, whether as a result of Customer's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

Section 8. Miscellaneous.
8.1 This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Customer to LEAF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

8.2 Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

8.3 This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantor and its successors and assigns. LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, the undersigned, pursuant to due corporate, limited liability company or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth above.

GUARANTOR: Alliance Technology Group, Inc.

BY: _____

PRINT NAME: _____

TITLE: _____

GUARANTOR'S TAX ID#: _____

STATE OR COMMONWEALTH OF: _New York_

COUNTY _Queens_    OF: _____

On this _30_ day of _Nov_, 200_6_, before me, a notary public, _____ (insert name of person signing guaranty), as an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she as an authorized representative of Guarantor, executed the foregoing Collateralized Guaranty for the purposes therein contained by signing his or her name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Laura_ _____
NOTARY PUBLIC LAURA ORTIZ
Notary Public, State of New York
No. 01OR5052644
Qualified in Queens County
Commission Expires Nov. 27, 2009

**EXHIBIT M**



# CORPORATE GUARANTY

THIS GUARANTY, dated as of November 27, 2006 ("Guaranty"), is made by ATG Equipment, Inc., an organization having its principal place of business at 1866 Berlin Turnpike, Wehersfield, CT 06109 ("Guarantor").

In order to induce LEAF Funding, Inc. ("LEAF") from time to time to enter into or extend certain financial accommodations from time to time with, or forebear from exercising rights and remedies against, Alliance Environmental Technologies, Inc.("Customer"), Guarantor guarantees to LEAF the payment and performance of the Obligations, as defined below. Guarantor acknowledges that LEAF is relying upon this Guaranty in providing financial accommodations to Customer. If more than one entity executes this Guaranty, the liability of each such Guarantor hereunder shall be joint and several.

**Section 1.** _Guaranty of Payment and Performance._ Guarantor guarantees to LEAF the prompt payment and/or performance of all indebtedness, obligations and liabilities of Customer at any time owing to LEAF, whether direct or indirect, matured or unmatured, primary or secondary, certain or contingent, or acquired by or otherwise created in favor of LEAF, including without limitation any and all rent, loan, purchase or other installment payments, principal balances, taxes, indemnities, liquidated damages, accelerated amounts, return deficiency charges, casualty value payments, all interest, late charges and fees, attorneys' fees or enforcement and other costs, which may at any time be payable to LEAF, together with all claims for damages arising from or in connection with the failure to punctually and completely pay or perform such obligations, whether or not such obligations are from time to time reduced or extinguished and thereafter increased or incurred (collectively the "Obligations"). This Guaranty is a guaranty of payment and performance, and not a guaranty of collection, and Guarantor hereby undertakes and agrees that if Customer does not or is unable to punctually and completely pay or perform any Obligations for any reason, Guarantor shall (i) punctually pay any such Obligations requiring the payment of money which Customer fails to pay promptly, as and when due, in each case, as an Obligation for payment due directly from Guarantor to LEAF and without any abatement, reduction, setoff, defense, counterclaim or recoupment, and (ii) punctually perform any and all Obligations not requiring the payment of money for the benefit of LEAF, as an Obligation for performance due directly from Guarantor to LEAF. Guarantor shall be deemed to be primarily liable for each Obligation and not merely as a surety thereof. This Guaranty is a continuing one and will be effective and binding upon Guarantor regardless of how long before or after the date hereof any Obligation may have arisen or will arise. The obligations of Guarantor hereunder shall be absolute and unconditional, irrespective of any circumstances which might constitute a legal or equitable defense or discharge of his or her obligations hereunder or which otherwise limit enforceability against the Guarantor by LEAF.

**Section 2.** _Representations, Warranties and Covenants._
2.1 Guarantor represents and warrants to LEAF, knowing that LEAF is relying thereon, as follows:

(a) Guarantor is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has full power and authority to enter into and perform its obligations under this Guaranty.

(b) The execution, delivery, and performance by Guarantor of this Guaranty have been duly authorized by all necessary action on the part of Guarantor, are not inconsistent with its organizational documents, do not and will not contravene any law or governmental rule, regulation or order applicable to Guarantor, and do not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument to which Guarantor is a party or by which it is bound. This Guaranty will constitute the legal, valid and binding agreement of Guarantor, enforceable in accordance with its terms.

(c) There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor in any court or before any governmental commission, board or authority which, if

adversely determined, will have a material adverse effect on the ability of Guarantor to perform its obligations under this Guaranty.

(d) The balance sheet and statement of income of Guarantor heretofore delivered to LEAF have been prepared in accordance with generally accepted accounting principles and fairly present the financial position of Guarantor on and as of the date thereof and the results of its operations for the period or periods covered thereby. Since the date of such balance sheet, there has been no material adverse change in the financial condition of Guarantor.

(e) As of the date hereof, and after giving effect to this Guaranty and the contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities. The performance of the obligations of Guarantor hereunder will not cause Guarantor to exceed its ability to pay its debts as they mature, and this Guaranty is made without any intent to hinder, delay or defraud either present or future creditors, purchasers or other interested persons.

2.2 Commencing on the date hereof and until all of the Obligations are satisfied in full, Guarantor shall furnish to LEAF: (i) within 120 days after the close of each fiscal year of Guarantor occurring after the date hereof, an audited balance sheet of Guarantor at and as of the end of such fiscal year, together with an audited statement of income of Guarantor for such fiscal year, all prepared in accordance with generally accepted accounting principles consistently applied, and (ii) from time to time, such other information as LEAF may reasonably request with respect to the financial or business condition of Guarantor.

**Section 3.** _Waiver of Precondition, Suretyship Defenses._ Guarantor hereby waives against LEAF as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceedings to enforce any provisions of the Obligations or this Guaranty, any right to require a proceeding first against the Customer or any party whatsoever or to exhaust any security for the Obligations, and all protests, presentment, notice (including, without limitation, notice of acceptance of this Guaranty by LEAF) or demand whatsoever. Guarantor hereby covenants that by its agreement under this Guaranty it shall not be discharged from its obligations hereunder or with respect to the Obligations except by payment in full of all amounts due and to become due with respect to the Obligations and this Guaranty and performance and discharge of all the Obligations, and only to the extent of any such payment, performance and discharge. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder and LEAF's rights to enforce same shall not be in any way affected by (i) any insolvency, bankruptcy, liquidation, reorganization, dissolution, winding up or other proceeding involving or affecting Customer, Guarantor or others; (ii) any change in the ownership of Customer; and (iii) any failure on the part of any other party whether or not without fault on its part to perform or comply with any of the terms of the Obligations or this Guaranty or any other instrument. Guarantor hereby waives any defenses which Guarantor may have or assert against the enforcement of this Guaranty or any obligation based upon suretyship principles or any impairment of collateral.

**Section 4.** _Relation with Customer, Release of Collateral._ LEAF may, without notice to Guarantor, deal with the Customer in the same manner and as freely as if this Guaranty did not exist and shall be entitled among other things, without loss of right hereunder, to grant Customer such extensions of time to perform any act or acts as may seem advisable to LEAF at any time and from time to time without terminating, affecting or impairing the validity of Guarantor's obligations hereunder. No compromise, alteration, amendment, modification, extensions, renewal, release of collateral, failure to acquire or maintain a lien upon collateral or other change of or waiver, consent or any action or delay or admission or failure to act in respect of any liability or obligation under or in respect of the Obligations shall in any way alter or affect the obligations of Guarantor hereunder.

**Section 5.** _Debt Subordination._ All debts and liabilities, present and future of the Customer to the Guarantor ("Subordinated Debt") are hereby subordinated to the payment and performance of the Obligations, and all monies received by the Guarantor or its representative, successors or assigns thereon, shall be received as trustee for LEAF and shall be paid

over to LEAF, and the Guarantor further agrees, upon any liquidation or distribution of the assets of the Customer, to assign to LEAF upon its request all claims on account of the Subordinated Debt and all security therefore, to the end that LEAF shall receive all dividends and payments on such Subordinated Debt until payment and performance in full of all the Obligations has occurred. This Guaranty shall constitute an assignment of the Subordinated Debt in the event the Guarantor shall fail or refuse to execute and deliver such other or further assignment of such claims and security as LEAF may request. Guarantor shall not demand or accept any payment of, or otherwise cancel, set-off or otherwise discharge any part of, the Subordinated Debt without the prior written consent of LEAF, provided, however, that for so long as there is no default hereunder or in connection with the Obligations or the Subordinated Debt, Guarantor may receive and Customer may pay (but not prepay, whether or not permitted or contemplated by the terms of the Subordinated Debt) principal and/or interest or other scheduled installment payments of Subordinated Debt from Customer. Upon the request of LEAF, Guarantor shall deliver to LEAF a certified statement of the outstanding Subordinated Debt, specifying in detail the time at which permitted payments of Subordinated Debt were made, if any, and such other information as LEAF may request.

Section 6. Waiver of Subrogation. Guarantor hereby irrevocably waives any and all rights it may have to enforce any of the LEAF's rights or remedies or participate in any security now or hereafter held, and any and all such other rights of subrogation, reimbursement, contribution or indemnification against the Customer, or any other person having any manner of liability for Customer's obligations to LEAF, whether or not arising hereunder, by agreement, at law or in equity.

Section 7. Events of Default. Each of the following events shall constitute an Event of Default under this Guaranty: (i)if there exists any event or condition which, with notice and/or the passage of time, would constitute a default under any document, agreement or instrument evidencing an Obligation (including any default relating to Guarantor or this Guaranty); (ii) Guarantor fails to perform or observe any covenant, term or condition or breaches any representation or warranty contained in this Guaranty and such failure shall continue unremedied for a period of fifteen days after written notice from LEAF to Guarantor stating the failure; or (iii) there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Customer or any Guarantor or other party liable to LEAF in respect of the Obligations, (each of the foregoing being hereinafter referred to as a "Default"), then the Obligations of Customer shall, at the sole option of LEAF, be deemed to be accelerated and become immediately due and payable by Guarantor for all purposes of this Guaranty, and Guarantor shall (Y) immediately pay directly to LEAF all such Obligations for the payment of money owing to LEAF by reason of acceleration or otherwise (including without limitation, any rent, liquidated damages, principal or interest payments or balances, fees, other installments or any other accrued or unaccrued amounts with respect to such Obligations), irrespective of whether a Default exists relating to Customer, and notwithstanding any stay, injunction or other prohibition preventing acceleration of any Obligations against Customer, and (Z) promptly perform all other Obligations. Guarantor shall be liable, as principal obligor and not as a surety or guarantor only, for all attorneys' fees and other costs and expenses incurred by LEAF in connection with LEAF's enforcement of this Guaranty, together with interest on all amounts recoverable under this Guaranty, compounded monthly in arrears, from the time such amounts become due and payable until the date of payment at the lesser of LEAF's then current late charge rate of interest or the highest rate permitted by applicable law. If LEAF is required to return any payment made to LEAF by or on behalf of Customer, whether as a result of Customer's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts, notwithstanding that the original of this Guaranty may have been returned to Guarantor and/or otherwise canceled. No remedy provided for herein is intended to be exclusive but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or in equity.

Section 8. Miscellaneous.
8.1   This Guaranty is in addition to and not exclusive of the guaranty of any other guarantor and of any and all prior guarantees by and of the Guarantor of the obligations of the Customer to LEAF. Guarantor waives all right to trial by jury in any litigation relating to this Guaranty or the transactions contemplated hereby.

8.2   Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the State of Delaware and to jurisdiction in the United States District Court for the District of Delaware with respect to any matter, suit or proceeding arising out of this Guaranty or the transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to LEAF similarly given.

8.3   This Guaranty shall, with the exception of laws relating to choice of law, be governed by and construed in accordance with the laws of the State of Delaware, without regard to the principles regarding the choice of law. This Agreement shall be binding upon Guarantor and its successors and assigns. LEAF may, at any time and without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which all or any portion of the Obligations are transferred, assigned or negotiated (an "Assignee"). Guarantor shall promptly execute and deliver to LEAF or its Assignee such further and additional documents, instruments and assurances as LEAF deems necessary in order to acknowledge and confirm, for the benefit of LEAF or its Assignee, all of the terms and conditions of all or any part of the Obligations or this Guaranty and LEAF's or Assignee's rights with respect thereto.

IN WITNESS WHEREOF, the undersigned, pursuant to due corporate, limited liability company or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth above.

GUARANTOR: ATG Equipment, Inc.

BY: _____

PRINT NAME: _____

TITLE: _____

GUARANTOR'S TAX ID#: _____

STATE OR COMMONWEALTH OF: _New York_
COUNTY _Queens_ OF:

On this _30_ day of _Nov_ , 200_6_ , before me, a notary public, _____ (insert name of person signing guaranty), an individual, personally appeared and acknowledged himself/herself to be such person, and that he/she as an authorized representative of Guarantor, executed the foregoing Collateralized Guaranty for the purposes therein contained by signing his or her name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
NOTARY PUBLIC

LAURA ORTIZ
Notary Public, State of New York
No. 01OR5052644
Qualified in Queens County
Commission Expires Nov. 27, 2009

EXHIBITS B THROUGH N CAN BE VIEWED BY LOOKING AT EX HIBIT A PART 1 AND 2 ATTACHED TO THIS AFFIDAVIT.

**EXHIBIT O**

Department of Defense Manpower Data Center                    MAR-18-2008 09:26:39

 Military Status Report
Pursuant to the Servicemembers Civil Relief Act

| ◄ Last Name | First/Middle | Begin Date | Active Duty Status | Service/Agency |
|---|---|---|---|---|
| SOLANO | Ligita | | Based on the information you have furnished, the DMDC does not possess any information indicating that the individual is currently on active duty. | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Military.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The Department of Defense strongly supports the enforcement of the Servicemembers Civil Relief Act [50 USCS Appx. §§ 501 et seq] (SCRA) (formerly the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's active duty status by contacting that person's Military Service via the "defenselink.mil" URL provided below. If you have evidence the person is on active-duty and you fail to obtain this additional Military Service verification, provisions of the SCRA may be invoked against you.

If you obtain further information about the person ( e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects current active duty status only. For historical information, please contact the Military Service SCRA points-of-contact.

   See: http://www.defenselink.mil/faq/pis/PC09SLDR.html

WARNING: This certificate was provided based on a name and Social Security number (SSN) provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.

*Report ID:**BSXYOSIZGOB***

Department of Defense Manpower Data Center                     MAR-18-2008 09:27:12



Military Status Report
Pursuant to the Servicemembers Civil Relief Act

| ◄ Last Name | First/Middle | Begin Date | Active Duty Status | Service/Agency |
|-------------|--------------|------------|--------------------|--------------|
| SOLANO | James | | Based on the information you have furnished, the DMDC does not possess any information indicating that the individual is currently on active duty. | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Military.

*Mary M. Snavely-Dixon*
_____

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The Department of Defense strongly supports the enforcement of the Servicemembers Civil Relief Act [50 USCS Appx. §§ 501 et seq] (SCRA) (formerly the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's active duty status by contacting that person's Military Service via the "defenselink.mil" URL provided below. If you have evidence the person is on active-duty and you fail to obtain this additional Military Service verification, provisions of the SCRA may be invoked against you.

If you obtain further information about the person ( e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects current active duty status only. For historical information, please contact the Military Service SCRA points-of-contact.

    See: http://www.defenselink.mil/faq/pis/PC09SLDR.html

WARNING: This certificate was provided based on a name and Social Security number (SSN) provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.

*Report ID:**BSVTOCBBTUL***

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for Leaf Funding, Inc.


_____ /s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


-------------------------------------------------------------------------x
                                                  :     Case Number:  07 CIV 10337
LEAF FUNDING, INC.,                               :     Judge Sweet
                                                  :
         Plaintiff,                               :            ECF CASE
                                                  :
         v.                                       :
                                                  :
ALLIANCE ENVIRONMENTAL TECHNOLOGIES,              :
INC., JAMES SOLANO, LIGITA SOLANO                 :     AFFIDAVIT OF SERVICES
ALLIANCE TECHNOLOGY GROUP, INC. and ATG           :
EQUIPMENT, INC.,                                  :
                                                  :
         Defendants.                              :
_____x


        FRANK PERETORE, the undersigned, an attorney duly licensed to practice law in the State of

New Jersey, duly sworn upon his oath, SAYS:

        1.  I am an attorney at law in the State of New Jersey and am a partner in the law firm of

Peretore & Peretore, P.C., attorneys for the plaintiff in the above-entitled matter.  I make this

Affidavit upon personal knowledge and in support of the plaintiff's Motion for Default Judgment

against defendants.

        2.  The plaintiff has retained this firm on an hourly basis, plus expenses.  As of  March 17,

2008, this office has invoiced Leaf Funding for $3,723.09 and $1,189.00 unbilled for a total of $4,912.09.  True and accurate copies of all invoices issued are attached hereto as **EXHIBIT A**. As is evidenced from the invoices, this office initially prepared and filed a Complaint and has since handled all aspects of this matter.

    3.  I am the attorney responsible for the handling of this matter.  I have represented  Leaf Funding for several years.  I have been practicing law, with a concentration in commercial litigation, since 1985.  I believe my hourly rate is fair and reasonable for an attorney of my experience in the legal community.

    4.  My hourly rate in this matter is $290.00.

       /s/  Frank Peretore, Esq.
      Frank Peretore, Esq.

Dated:


Sworn to and subscribed
before me this 19th day
of March, 2008.


     /s/ Marlene J. Meyers

Notary Public of New Jersey
My Commission Expires Feb. 9, 2010

**EXHIBIT A**

# Peretore & Peretore

A Professional Corporation
Counsellors at Law
191 Woodport Road
Sparta, New Jersey 07871

(973) 729-8991
Telefax   (973) 729-8913

**Tax I.D. #22-3484779**

Leaf Financial Corporation

2005 Market Street
15th Floor
Philadelphia, PA 19103

Attention: Mr. James J. Grant

May 21,2007

Matter:      alliance-lea

Invoice #:        22945

RE:     Leaf Financial Corp v. Alliance Environmental Technologies, Inc., James Solano, Legita
        Solano and ATG Equipment, Inc. - Contracts 015-1036829-901 and 001-1040954-001

| DATE | DESCRIPTION | RATE | HOURS | AMOUNT | LAWYER |
|------|-------------|------|-------|--------|--------|
| Apr-06-07 | Review all documents and draft Demand Letter. | $250.00 | 0.75 | 187.50 | FP |
| Apr-19-07 | Review all lease documents and prepare initial draft of Order to Show Cause and supporting Affidavit, Verified Complaint and Memorandum of Law. | $250.00 | 1.50 | 375.00 | FP |
| | Totals | | 2.25 | $562.50 | |

| | |
|---|---|
| **Total Fees & Disbursements** | **$562.50** |
| Previous Balance | $0.00 |
| Previous Payments | $0.00 |
| **Balance Due Now** | **$562.50** |

# Peretore & Peretore

A Professional Corporation
Counsellors at Law
191 Woodport Road
Sparta, New Jersey 07871

(973) 729-8991
Telefax   (973) 729-8913

**Tax I.D. #22-3484779**

Leaf Financial Corporation

2005 Market Street
15th Floor
Philadelphia, PA 19103

Attention: Mr. James J. Grant

June 12,2007

Matter:     alliance-lea

Invoice #:      23153

RE:     Leaf Financial Corp v. Alliance Environmental Technologies, Inc., James Solano, Legita
Solano and ATG Equipment, Inc. - Contracts 015-1036829-901 and 001-1040954-001

| DATE | DESCRIPTION | RATE | HOURS | AMOUNT | LAWYER |
|------|-------------|------|-------|--------|--------|
| May-02-07 | Letter to client and review UCC Searches issues. | $250.00 | 0.40 | 100.00 | FP |
| May-04-07 | Review equipment location and replevin issues. | $250.00 | 0.40 | 100.00 | FP |
| May-09-07 | Letter to client | $250.00 | 0.25 | 62.50 | FP |
| | Totals | | 1.05 | $262.50 | |

**Total Fees & Disbursements**                                          **$262.50**

Previous Balance                                                              $562.50
Previous Payments                                                              $0.00

**Balance Due Now**                                                       **$825.00**

# Peretore & Peretore

A Professional Corporation
Counsellors at Law
191 Woodport Road
Sparta, New Jersey 07871

(973) 729-8991
Telefax   (973) 729-8913

**Tax I.D. #22-3484779**

Leaf Financial Corporation

2005 Market Street
15th Floor
Philadelphia, PA 19103

Attention: Mr. James J. Grant

November 27,2007

Matter:      alliance-lea

Invoice #:        24222

RE:      Leaf Financial Corp v. Alliance Environmental Technologies, Inc., James Solano, Legita
Solano and ATG Equipment, Inc. - Contracts 015-1036829-901 and 001-1040954-001

| DATE | DESCRIPTION | RATE | HOURS | AMOUNT | LAWYER |
|------|-------------|------|-------|--------|--------|
| Oct-15-07 | Letter to adversary and Client conference | $275.00 | 0.50 | 137.50 | FP |
| Oct-16-07 | Review loan documents and draft complaint. | $275.00 | 1.00 | 275.00 | FP |
| Oct-17-07 | Conference with Elcor and review repossession issues. | $275.00 | 0.40 | 110.00 | FP |
| Oct-18-07 | Revise complaint in accordance with additional loan documents and liens, and draft Order to show Cause. for Replevin. | $275.00 | 1.25 | 343.75 | FP |
| Oct-22-07 | Revise and finalize Federal Complaint and draft Letter to client | $275.00 | 0.50 | 137.50 | FP |
| Oct-23-07 | repossession issues. | $275.00 | 0.25 | 68.75 | FP |
| | Totals | | 3.90 | $1,072.50 | |

Case 1:07-cv-10337-RWS     Document 7-11     Filed 03/19/2008     Page 5 of 10

| | |
|---|---|
| **Total Fees & Disbursements** | **$1,072.50** |
| Previous Balance | $825.00 |
| Previous Payments | $825.00 |
| **Balance Due Now** | **$1,072.50** |

# Peretore & Peretore

A Professional Corporation
Counsellors at Law
191 Woodport Road
Sparta, New Jersey 07871

(973) 729-8991
Telefax   (973) 729-8913

**Tax I.D. #22-3484779**

Leaf Financial Corporation

2005 Market Street

15th Floor

Philadelphia, PA 19103

December 18,2007

Matter:     alliance-lea

Attention:  Mr. James J. Grant

Invoice #:        24386

RE:     Leaf Financial Corp v. Alliance Environmental Technologies, Inc., James Solano, Legita
Solano and ATG Equipment, Inc. - Contracts 015-1036829-901 and 001-1040954-001

| DATE | DESCRIPTION | RATE | HOURS | AMOUNT | LAWYER |
|------|-------------|------|-------|--------|--------|
| Nov-11-07 | Finalize and file Complaint. | $275.00 | 0.50 | 137.50 | FP |
| Nov-23-07 | Prepare for service. | $275.00 | 0.40 | 110.00 | FP |
| | Totals | | 0.90 | $247.50 | |

**DISBURSEMENTS**

| | Disbursements | Receipts |
|---|---|---|
| Filing Fee | 430.00 | |
| Totals | $430.00 | $0.00 |

**Total Fees & Disbursements**                    **$677.50**

Previous Balance                              $1,072.50
Previous Payments                                  $0.00

**Balance Due Now**                            **$1,750.00**

# Peretore & Peretore

A Professional Corporation
Counsellors at Law
191 Woodport Road
Sparta, New Jersey 07871

(973) 729-8991
Telefax   (973) 729-8913

**Tax I.D. #22-3484779**

Leaf Financial Corporation

2005 Market Street
15th Floor
Philadelphia, PA 19103

Attention:  Mr. James J. Grant

January 18,2008

Matter:      alliance-lea

Invoice #:        24554

RE:      Leaf Financial Corp v. Alliance Environmental Technologies, Inc., James Solano, Legita
Solano and ATG Equipment, Inc. - Contracts 015-1036829-901 and 001-1040954-001

| DATE | DESCRIPTION | RATE | HOURS | AMOUNT | LAWYER |
|------|-------------|------|-------|--------|--------|
| Dec-05-07 | Client conference and Letter to client | $275.00 | 0.25 | 68.75 | FP |
| Dec-13-07 | review Service issues | $275.00 | 0.25 | 68.75 | FP |
| Dec-14-07 | negotiations. | $275.00 | 0.25 | 68.75 | FP |
| Dec-19-07 | Letter to court. re; Affidavits of Service. | $275.00 | 0.20 | 55.00 | FP |
| Dec-27-07 | Address service issues. | $275.00 | 0.40 | 110.00 | FP |
| | Totals | | 1.35 | $371.25 | |

**DISBURSEMENTS**

| | | Disbursements | Receipts |
|--|--|--|--|
| Dec-19-07 | Overnight(s) thru 12/10/07 | 22.89 | |
| | Totals | $22.89 | $0.00 |

Case 1:07-cv-10337-RWS          Document 7-11          Filed 03/19/2008          Page 8 of 10

**Total Fees & Disbursements** | **$394.14**

Previous Balance | $1,750.00
Previous Payments | $0.00

**Balance Due Now** | **$2,144.14**

# Peretore & Peretore

A Professional Corporation
Counsellors at Law
191 Woodport Road
Sparta, New Jersey 07871

(973) 729-8991
Telefax   (973) 729-8913

**Tax I.D. #22-3484779**

Leaf Financial Corporation

2005 Market Street

15th Floor

Philadelphia, PA 19103

February 21,2008

Matter:      alliance-lea

Attention: Mr. James J. Grant

Invoice #:        24743

RE:      Leaf Financial Corp v. Alliance Environmental Technologies, Inc., James Solano, Legita Solano and ATG Equipment, Inc. - Contracts 015-1036829-901 and 001-1040954-001

| DATE | DESCRIPTION | RATE | HOURS | AMOUNT | LAWYER |
|------|-------------|------|-------|--------|--------|
| Jan-07-08 | Service issues. | $290.00 | 0.25 | 72.50 | FP |
| Jan-14-08 | Review service problems. | $290.00 | 0.20 | 58.00 | FP |
| | Totals | | 0.45 | $130.50 | |

| **DISBURSEMENTS** | | **Disbursements** | **Receipts** |
|-------------------|---|-------------------|-------------|
| Jan-01-08 | Photocopies through December, 2007 235 @ 0.20 | 47.00 | |
| | Photocopies through December, 2007 307 @ 0.20 | 61.40 | |
| | Postage through December, 2007 | 7.05 | |
| | Postage through December, 2007 | 8.00 | |
| Jan-30-08 | Service of Summons & Complaint | 460.00 | |
| Jan-31-08 | Service of Summons & Complaint on ATG Equipment, Inc. | 40.00 | |
| | Totals | $623.45 | $0.00 |

Case 1:07-cv-10337-RWS     Document 7-11     Filed 03/19/2008     Page 10 of 10

| | |
|---|---:|
| **Total Fees & Disbursements** | **$753.95** |
| Previous Balance | $2,144.14 |
| Previous Payments | $0.00 |
| **Balance Due Now** | **$2,898.09** |

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for Leaf Funding, Inc.


_____ /s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x
                                                    :       Case Number:  07 CIV 10337

LEAF FUNDING, INC.,                     :       Judge Sweet
                                                        :

    Plaintiff,                          :           ECF CASE
                                                        :

    v.                                 :
                                                        :

ALLIANCE ENVIRONMENTAL TECHNOLOGIES,  :       ORDER AND DEFAULT
INC., JAMES SOLANO, LIGITA SOLANO      :         JUDGMENT
ALLIANCE TECHNOLOGY GROUP, INC. and ATG :
EQUIPMENT, INC.,                      :
                                                      :

    Defendants.                      :
_____x


      This matter having come before the Court by motion of counsel for the plaintiff ("Leaf

Funding") seeking entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2)

against the defendants for failure to answer or otherwise move in response to the Complaint which

was duly served upon them; and said defendants being in default of payment obligations to the plaintiff and the defendants; and the plaintiff having submitted an Affidavit of Amount Due and Non-Military Service;

**THE COURT FINDS:**

1. This Court has jurisdiction of the subject matter of all counts of this action and over all the parties hereto.

2. The defendants were duly served with the Summons and Complaint.

3. The time to respond to the Summons and Complaint has expired and the defendants failed to respond.

4. A default judgment in this action is hereby to be entered in favor of Leaf Funding, Inc. and against Alliance Environmental Technologies, Inc., James Solano, Ligita Solano, Alliance Technology Group, Inc. and ATG Equipment, Inc., jointly and severally.

**IT IS, THEREFORE ORDERED AND ADJUDGED**, that Leaf Funding, Inc. recover from, Alliance Environmental Technologies, Inc., James Solano, Ligita Solano, Alliance Technology Group, Inc. and ATG Equipment, Inc., jointly and severally, the sum of $265,439.43 plus attorneys' fees in the amount of $4,912.09 for a total of $270,351.52; and it is further

**ORDERED**, that plaintiff shall have immediate and permanent title and possession to the equipment ("the equipment") subject to the transactions described in the Complaint and motion papers, which has not been returned to plaintiff, and which is described on **EXHIBIT A** hereto; and it is further

**ORDERED**, that the defendants shall properly maintain said equipment and return it to plaintiff or its agents within five (5) days hereof and fully cooperate in said return; and it is further

**ORDERED**, in the event that plaintiff takes possession of the equipment, plaintiff shall attempt to dispose of said personal property in a commercially reasonable manner in accordance with the New York Uniform Commercial Code and the net proceeds from said sale, if any, after deduction of reasonable expenses of retaking, holding, preparing for sale, selling and the like, shall be applied to reduce the amount of the Judgment herein; and it is further

**ORDERED**, that a copy of this Order shall be served upon defendants within _____ days of receipt of same by plaintiff's counsel.

**SO ORDERED**, this _____ day of _____, 2008.

_____
United States District Judge

3

**EXHIBIT A**

ATTACHMENT A
TO MASTER LEASE SCHEDULE NO. 1
ISSUED PURSUANT TO THAT CERTAIN MASTER LEASE
AGREEMENT DATED APRIL 11, 2006
BY AND BETWEEN
ALLIANCE ENVIRONMENTAL TECHNOLOGIES, INC. ("LESSEE") AND
LEAF FUNDING, INC. ("LESSOR")

SYSTEM DESCRIPTION:

1 – 2001 Freightliner – Mdl:ML60 w/24' Morgan body (VIN# 1FVABPAK71HH00034)
10- 2005 Cheetah Double Drop Trailers (Vin #s:  5EF2SC4075B761298, 5EF2SC4095B761299, 5EF2SC4015B761300,
   5EF2SC4035B761301, 5EF2SC4005B761305, 5EF2DF4205B761186, 5EF2DF4235B761179, 5EF2DF42X5B761180,
   5EF2DF4225B761187, and 5EF2DF4245B761188)

| LESSOR: LEAF FUNDING, INC. | LESSEE: Alliance Environmental Technologies, Inc. |
|---|---|
| By: | By: |
| Print Name: | Print Name: J. Solow |
| Title: VP of OPS | Title: V.P |
| Date: 4/27/06 | Date: 4-14-06 |

© LEAF Funding, Inc. 2003, all rights reserved.        Page 3 of 3        4-23-03



**LEAF**
FINANCIAL
CORPORATION

SCHEDULE A TO

**Restructure of Lease Agreement,**
**Dated November 27, 2006**
**BY Alliance Environmental Technologies, Inc.**
**("Lessee")**
**IN FAVOR OF LEAF FUNDING, INC.**
**COLLATERAL DESCRIPTION:**

ATG Containers S/N#:

AWIN 6603
AWIN 6512
AWIN 6989
AWIN 6053
AWIN 6697
AWIN 6170
AWIN 6852
AWIN 6826
AWIN 7245
AWIN 6895
AWIN 6616
AWIN 6617

Collateral Location:

ATG Equipment, Inc
55 Fulkerson Drive
Waterbury, CT  06708

BORROWER: Alliance Environmental Technologies, Inc.

BY: _____

PRINT NAME: _____

TITLE: _____

DATE: __11/30/06__

witness to signature

_Laura_

LAURA ORTIZ
Notary Public, State of New York
No. 01OR5052644
Qualified in Queens County
Commission Expires Nov. 27, 2009

Page 2 of 2

## UCC FINANCING STATEMENT

FOLLOW  INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

Phone (800) 331-3282    Fax (818) 662-4141

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

NY, Secretary of State

IMAGE REFLECTS DATA FROM AN ELECTRONIC FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Solano | James | J. | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 421 North Long Beach Road | Rockville Center | NY | 11570 | US |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 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 | | | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Solano | Ligita | I. | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 421 North Long Beach Road | Rockville Center | NY | 11570 | US |

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 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 | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME   LEAF Funding, Inc. | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1818 Market St., 9th Floor | Philadelphia | PA | 19103 | US |

4. This FINANCING STATEMENT covers the following collateral:

All "equipment" and "inventory" (as such is defined in the UCC) of the Debtors now owned or possessed or
hereafter acquired, whether new or used, together with any additions, accessories and accessions now or
hereafter attached thereto, substitutions therefor and proceeds thereof, and including, without limitation, all
proceeds of any insurance covering the equipment and inventory, all tangible and intangible personal property
owned or possessed by Debtors, all cash, cash equivalents, accounts, accounts receivable, contract rights,
chattel paper, customer lists, goodwill and all proceeds of same.  Debtors may not dispose of any of the
Collateral without the prior written consent of Secured Party, notwithstanding the fact that proceeds constitute
a part of the Collateral.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA  10040954          Philadelphia

21356903

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

PERETORE & PERETORE, P.C.
191 Woodport Road
Sparta, New Jersey 07871
(973) 729-8991
Attorneys for Leaf Funding, Inc.


_____ /s/ Frank Peretore, Esq.
Frank Peretore, Esq.
FP #7020



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


-------------------------------------------------------------------------x
|  | : | Case Number:  07 CIV 10337 |
| LEAF FUNDING, INC., | : | Judge Sweet |
|  | : |  |
|     Plaintiff, | : | ECF CASE |
|  | : |  |
|     v. | : |  |
|  | : |  |
| ALLIANCE ENVIRONMENTAL TECHNOLOGIES, | : | AFFIDAVIT OF MAILING |
| INC., JAMES SOLANO, LIGITA SOLANO | : |  |
| ALLIANCE TECHNOLOGY GROUP, INC. and ATG | : |  |
| EQUIPMENT, INC., | : |  |
|  | : |  |
|     Defendants. | : |  |
-------------------------------------------------------------------------x

STATE OF NEW JERSEY   :

                   : SS.:

COUNTY OF SUSSEX      :

    I, Marlene Meyers, am over 18 years of age and am not a party to this action, being duly sworn

according to law, SAY:

    1. On March 19, 2008, I mailed a copy of the Notice of Motion for Default Judgment, Request

for Entry of Default, Affidavit of Service, Affidavit of Amount Due and Non-Military Service,

proposed Order, copy of the Summons, Complaint and Affidavit of Mailing, to the defendants as

follows:

> Alliance Environmental Technologies, Inc.
> 490 East 132nd Street
> Bronx, New York 10454
>
> James Solano
> 421 North Long Beach Road
> Rockville Centre, New York 11570
>
> Ligita Solano
> 421 North Long Beach Road
> Rockville Centre, New York 11570
>
> Alliance Technology Group, Inc.
> 490 East 132nd Street
> Bronx, New York 10306
>
> ATG Equipment, Inc.
> c/o Ligita Solano
> 421 North Long Beach Road
> Rockville Centre, New York 11570

which were deposited into a United States Mail Depository located at 1 Main Street, Unionville, New

York 10988.


                                        /s/  Marlene Meyers
                                        Marlene Meyers

Sworn to and subscribed
before me this 19th day
of March, 2008.


      /s/ Erin C. Clayton
Erin C. Clayton
Notary Public of New Jersey
My Commission Expires 05/16/2011